**RSR CORPORATION, Appellant,**

v.

**FEDERAL TRADE COMMISSION.**

No. 80–2131.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1980.

Decided April 30, 1981.

**76.** *See* note 71 *supra.*

Joshua F. Greenberg, New York City, with whom William C. Lane, Jr., Washington, D. C., was on the brief, for appellant.

John D. Bates, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, Kenneth M. Raisler, Asst. U. S. Attys., James H. Sneed, Acting Gen. Counsel, Jerald D. Cummins, Deputy Asst. Gen. Counsel and Jane P. Schlaifer, Atty., F. T. C., Washington, D. C., were on the brief, for appellee.

Before ROBINSON and MacKINNON, Circuit Judges and JUNE L. GREEN,[*] District Judge.

OPINION PER CURIAM.

PER CURIAM:

Under attack on this appeal is a summary judgment for the Federal Trade Commission in an action brought by RSR Corporation (RSR) to compel the Commission to reopen a lengthy antitrust proceeding. After unsuccessfully seeking the Commission's leave to present evidence bearing on the current propriety of a divestiture order emanating from that proceeding, RSR asserted in the District Court that the Commission's refusal to reopen was not only arbitrary but also contaminated by ex parte communications with its staff. The District Court concluded that RSR had not shown circumstances extraordinary enough to justify setting aside the decision against reopening.[1] We affirm.[2]

## I. BACKGROUND

RSR engages primarily in the recovery of recycled or "secondary" lead from scrap

[*] Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. *RSR Corp. v. FTC*, No. 80–1986 (D.D.C. Sept. 12, 1980) (order), Joint Appendix (J.App.) 13.

2. We have heretofore entered our judgment to that effect, stating therein that our opinion would follow. We now articulate our reasons.

sources such as used batteries.[3] In 1972 RSR acquired through merger substantially all of the assets of another secondary lead smelting firm, Quemetco, Inc., and thereby increased its share of the secondary lead market in the United States from 12.16 to 19.18 percent.[4] Resultantly, in 1974 the Commission issued a complaint[5] charging RSR with a violation of Section 7 of the Clayton Act.[6] After a three-month hearing, an administrative law judge ruled, *inter alia*, that RSR's merger with Quemetco contravened Section 7 because it could substantially lessen competition in the national market for secondary lead,[7] and recommended divestiture of one of four smelting plants RSR had derived from the merger.[8] The Commission accepted the judge's finding of a Section 7 transgression,[9] but ordered RSR to divest itself of almost all of its Quemetco assets.[10] The Ninth Circuit affirmed,[11] and the Supreme Court declined further review.[12]

RSR thereafter petitioned the Commission to reopen the proceeding on the ground that changed conditions in the secondary lead smelting industry had rendered the divestiture order unnecessary to remove any prior anticompetitive effect.[13] RSR also alleged that ex parte communications of an undisclosed nature had occurred between the Commission and its prosecutive staff regarding the decision to reopen,[14] and sought to bar any such future contacts.[15] The Commission ruled that RSR's proffered evidence was insufficient on its face to warrant reopening,[16] and that consideration of RSR's petition to reopen was not a process subject to ex parte constraints.[17]

RSR then came to the District Court for an order to reopen. The grounds of suit were that the Commission's refusal to reopen was arbitrary, and was vitiated by ex parte contacts with the prosecutive staff.[18] This appeal followed the District Court's grant of summary judgment in favor of the Commission.

RSR argues that the Commission's decision not to reopen the Clayton Act proceeding was incorrect on the merits.[19] RSR further contends that the claimed communications between the staff and the Commission regarding the decision to reopen violated RSR's procedural due process rights as well as relevant provisions of the Administrative Procedure Act.[20] We consider each of these contentions in turn.

## II. REFUSAL TO REOPEN

 In ruling that the Commission did not err in declining to reopen a proceeding

---

3.  *RSR Corp.*, 88 F.T.C. 800, 807 (1976). Once recovered, the lead normally is then resold to manufacturers to be used in the production of new batteries. *Id.* at 824.

4.  *Id.* at 874, 886.

5.  *Id.* at 800–805.

6.  38 Stat. 730 (1914), as amended, 15 U.S.C. § 18 (1976).

7.  *RSR Corp., supra* note 3, 88 F.T.C. at 800–874.

8.  *Id.* at 868–869.

9.  *Id.* at 886–892.

10.  *Id.* at 892–904.

11.  *RSR Corp. v. FTC*, 602 F.2d 1317 (9th Cir. 1979).

12.  445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980).

13.  J.App. 376. RSR originally petitioned for reopening on October 29, 1979, prior to the Supreme Court's ruling, but the Commission declined, without prejudice, to act on that request pending the result in the Supreme Court. J.App. 392. See 16 C.F.R. § 3.71 (1980).

14.  The communications allegedly took place immediately after the Commission received RSR's initial request to reopen on October 29, 1979. J.App. 381. See note 13 *supra*.

15.  J.App. 394.

16.  J.App. 402–405.

17.  J.App. 402.

18.  J.App. 3.

19.  Brief for Appellant at 21–45.

20.  Brief for Appellant at 45–48.

that already had spanned six years,[21] the District Court considered the submissions of both parties, including the extensive record compiled before the Commission, and found that it had made a "reasoned and reasonable statement on the record denying [RSR's] administrative application for reconsideration."[22] The court acted in full accord with the applicable law, and we readily affirm on this aspect of the appeal.

Both the Supreme Court and this court consistently have subscribed to the rule that administrative agencies are not to be required to reopen their final orders "except in the most extraordinary circumstances."[23] The need for that principle is evident, for "[i]f upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening;"[24] moreover, "there would [be] little assurance that at the conclusion of such a reopening, and the time required to digest the new material, the record would not again have become 'stale.'"[25] Consequently, "[i]t has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion[,] [a]nd likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body."[26] As the Supreme Court has admonished, "there is sound basis for adhering to [the] practice of declining to require reopening of the record, except in the most extraordinary circumstances."[27]

The record before us amply supports the District Court's view that the Commission acted reasonably in declining to reopen the proceeding leading to the divestiture order. RSR contends vigorously that changed circumstances in the secondary lead smelting industry—most notably the advent of a new maintenance-free battery[28]—has rendered the Commission's divestiture order unnecessary to counteract whatever anticompetitive effects RSR's 1972 merger with Quemetco may have occasioned.[29] This same argument, however, was advanced unsuccessfully not only before the administrative law judge[30] but also before both the Commission[31] and the Ninth Circuit on appeal.[32] All three tribunals felt that the speculative nature of RSR's claim sapped whatever strength it might otherwise have had. Moreover, both the administrative law judge and the Commission ruled that even if taken as true, RSR's thesis would not

21. The Commission issued its complaint on April 1, 1974. Administrative hearings commenced on July 21, 1975, and were completed on October 17 of that year. The administrative law judge rendered his decision on April 20, 1976, and the Commission announced its opinion on December 2 following. The Ninth Circuit affirmed on July 30, 1979, and the Supreme Court denied certiorari on March 17, 1980.

22. *RSR Corp. v. FTC, supra* note 1, J.App. 13.

23. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 296, 95 S.Ct. 438, 447, 42 L.Ed.2d 447, 462 (1974); *Union Mechling Corp. v. United States,* 185 U.S.App. D.C. 57, 61, 566 F.2d 722, 726 (1977).

24. *ICC v. Jersey City,* 322 U.S. 503, 514, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420, 1428 (1944).

25. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., supra* note 23, 419 U.S. at 296, 95 S.Ct. at 447, 42 L.Ed.2d at 462.

26. *ICC v. Jersey City, supra* note 24, 322 U.S. at 514–515, 64 S.Ct. at 1134 ·1135, 88 L.Ed. at 1428.

27. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., supra* note 23, 419 U.S. at 296, 95 S.Ct. at 447, 42 L.Ed.2d at 462.

28. Maintenance-free batteries employ calcium lead rather than antimonial lead. RSR claims that this development has effectively eliminated any distinction between the primary and secondary lead markets in the United States for purposes of Section 7 liability. *See* Brief for Appellant at 21–45.

29. *See* Brief for Appellant at 21–45.

30. *See RSR Corp., supra* note 3, 88 F.T.C. at 854, 867.

31. *See id.* at 891–892.

32. *See RSR Corp. v. FTC, supra* note 11, 602 F.2d at 1322.

justify setting aside the divestiture order.[33] In denying RSR's petition to reopen the proceeding, the Commission stated:

Given that the affidavits submitted, if accepted at face value, serve at most to undermine, to some limited degree, the validity of one of the *Brown Shoe* criteria,[34] the Commission cannot conclude that a basis has been shown that would warrant reopening as to the product market and conducting a second trial as to the merits of the various claims made.

With respect to [RSR's] claim that a national market for secondary lead no longer exists, the facts asserted by the affiants are at most slight variants of those that were considered in detail by the administrative law judge and the Commission in the original trial of this matter. While the market definition question was undoubtedly open to reasonable disagreement, it was fully litigated, and the Commission's disposition was affirmed by the Court of Appeals with *certiorari* denied by the Supreme Court. The facts presented in the instant motion to reopen are not such as would warrant a re-adjudication of the geographic market question.[35]

In these circumstances, we cannot say that the District Court was amiss in ruling as it did.

## III. EX PARTE COMMUNICATIONS

■ RSR's complaint of ex parte communications refers exclusively to a presentation the prosecutive staff is said to have made to the Commission's members on the petition to reopen.[36] There is no claim of any sort of contact between the agency and outsiders.[37] The question, then, is whether it was improper for those who had to pass on the petition to make use of the staff in reaching their decision.

The Administrative Procedure Act states pertinently, with exceptions not applicable here, that

in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, . . . [a]n employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review . . . except as witness or counsel in public proceedings.[38]

That, of course, is a command that the Commission must scrupulously observe. But, as the legislative language itself makes evident, this prohibition obtains only when some statute necessitates adjudication of the matter in question on the administrative record.[39] The statute governing Commission consideration of a proposal to reopen imposes no such procedure; it simply authorizes reopening "whenever in the opinion of the Commission . . . conditions of fact or of law have so changed as to require

**33.** See *RSR Corp., supra* note 3, 88 F.T.C. at 854, 891–892.

**34.** The administrative law judge had found that five of the seven indicia of a relevant market articulated in *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510, 535–536 (1962), supported his conclusion that RSR's merger with Quemetco could substantially lessen competition in the secondary lead market. See *RSR Corp., supra* note 3, 88 F.T.C. at 859–860.

**35.** J.App. 404.

**36.** See Brief for Appellant at 13–16. The precise nature of the presentation does not appear from the record.

**37.** Compare *United States Lines v. FMC,* 189 U.S.App.D.C. 361, 378–384, 584 F.2d 519, 536– 542 (1978); *Home Box Office, Inc. v. FCC,* 185 U.S.App.D.C. 142, 184–192, 567 F.2d 9, 51–59, *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); text *infra* at notes 47–50.

**38.** 5 U.S.C. § 554(d) (1976).

**39.** See *United States v. Alleghany-Ludlum Steel Co.,* 406 U.S. 742, 756–757, 92 S.Ct. 1941, 1950, 32 L.Ed.2d 453, 464–465 (1972) (construing nearly identical language of 5 U.S.C. § 553). *Cf. Marketing Assistance Program v. Bergland,* 183 U.S.App.D.C. 357, 360–361, 562 F.2d 1305, 1308–1309 (1977) (construing 5 U.S.C. § 554(d)); *Yong v. Regional Manpower Administration,* 509 F.2d 243, 245 (9th Cir. 1975) (same).

such action or if the public interest shall so require." [40]

RSR nevertheless asserts that the Commission's consideration of a request to reopen "has all the hallmarks of an adjudicative proceeding." [41] Certainly the Commission does not think so, for its regulation on reopenings prescribes no procedure whatsoever beyond the filing of a reopening request containing specified information. [42] Indeed, the Commission fashioned this regulation in that manner for reasons directly pertinent here. As it then explained,

> no provision of the FTC Act ... requires notice and opportunity for hearing with respect to the Commission's predecisional deliberations on petitions to reopen; hence, the APA adjudicatory provisions are inapplicable to these deliberations. The mere filing of a petition to reopen, in other words, does not under the FTC Act automatically trigger the adjudicative process. That process begins only if the Commission after reviewing the petition issues an order ... reopening the proceeding when in its opinion changed conditions of fact or law or the public interest require such reopening. [43]

We concur in this analysis. RSR's petition requested reopening of an administrative order that had long since become final. The adjudicative process producing that order came to an end when the order was promulgated. When the Commission addressed RSR's petition, it was merely seeking to reach a conclusion on whether it should reopen the record underlying the

order and thereby initiate a new round of adjudication. And in pondering that question, the Commission treated as true RSR's allegations, [44] thus avoiding the need for any adjudicative findings. To be sure, had reopening occurred, RSR would have had a chance to persuade the Commission to modify the order. But the pre-reopening phase itself was only a prelude to a resumption of the adjudicative process—which possibly could have taken place, but never did.

It would be a mistake to assume automatically, as RSR apparently does, that Commission consideration of the petition to reopen was itself adjudicative, and thus forbade assistance by the prosecutive staff, simply because that had been the nature of the administrative activity preceding the petition, and would have been the nature of the activity that would have followed had the petition been successful. As Professor Davis points out, "any proceeding ... may involve a plurality of tasks, ... and the proper procedure has to reflect each of those tasks, not the whole proceeding[;] ... [l]etting the choice of procedure depend upon characterization of a whole proceeding as ... 'adjudication,' ... involves crude thinking that fails even to begin to reach the true reasons that should control the selection of the appropriate procedure." [45] The Commission, we think, was at liberty to regard the pre-reopening phase of the proceeding according to what *it* demanded or permitted procedurally, and not to ascribe to it a character based upon what some other phase may have called for. [46] As we

---

**40.** 15 U.S.C. § 21(b) (1976), providing in relevant part:

> After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission or Board may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission or Board conditions of fact or of law have so changed as to require such action or if the public interest shall so require.

**41.** See Brief for Appellant at 47.

**42.** 16 C.F.R. § 2.51 (1980).

**43.** 44 Fed.Reg. 40636 (1979).

**44.** See text *supra* at note 33.

**45.** 2 K. Davis, Administrative Law § 10:5 at 321–322 (1979).

**46.** This court already has ruled consistently with Professor Davis' observation. We recently found cancellation and suspension proceedings under the Federal Insecticide, Fungicide and Rodenticide Act to be separate proceedings in the sense that decisions in the two are made under different standards. *EDF v. EPA*, 167 U.S.App.D.C. 71, 84, 510 F.2d 1292, 1305 (1975). Thus we found no impropriety in ex parte communications from members of the

have said, we do not find the elements of adjudication present in the phase drawn into inquiry here.

▉ If, then, there is any ban on communications between the agency's prosecutive and adjudicative arms relative to a motion to reopen, it clearly must exist by operation of something other than the Administrative Procedure Act. RSR also asserts that, even if the pre-reopening phase is deemed nonadjudicative, prior decisions of this court compel the finding of a denial of due process on the facts here. We deem this argument totally misplaced. True it is that, as we recently acknowledged, this court twice now [47] has gone "beyond the strict terms of the [Administrative Procedure Act] and the substantive agency statute to impose a ban on *ex parte* contacts ... [in holding] that off-the-record communications between members of the agency and interested outside parties violated the due process rights of parties not privy to the communications." [48] But, as we hastened to add, "neither of these cases involves improper influence of staff on agency decisionmakers, nor does the reasoning of either case lead us to apply the ban on ex parte contacts to agency staff." [49] It bears repeating that RSR makes no claim of any improper communication between the Commission and outsiders.[50]

The judgment appealed from is

*Affirmed.*

Environmental Protection Agency's enforcement staff—which then was involved in a continuing cancellation hearing—to the agency's administrator favoring issuance of a suspension notice to the same party. *Id.* at 84, 510 F.2d at 1305. "There is no allegation," we noted, "of communication between 'prosecutor' and agency head regarding the final decision in either the cancellation proceeding or the suspension proceeding." *Id.* (footnote omitted). See also *Alaska S.S. Co. v. FMC*, 356 F.2d 59, 61 (9th Cir. 1966). The situation before us is a close parallel. When the challenged communication between staff and Commission occurred, the latter was not undertaking to alter its preexisting order in any wise; it was simply determining whether the record of the old proceeding should be reopened to present the occasion for such an undertaking, one way or the other. This was a judgment the Commission had to make, and one to which considerations

of administrative policy and practicality would contribute heavily. This particular step involved no adjudication of the type that would bring the proscription against contacts between an agency and its staff into play.

**47.** See *United States Lines, Inc. v. FMC, supra* note 37, 189 U.S.App.D.C. at 378–385, 584 F.2d at 536–543; *Home Box Office, Inc. v. FCC, supra* note 37, 185 U.S.App.D.C. at 184–192, 567 F.2d at 51–59.

**48.** *United Steelworkers of America v. Marshall*, 647 F.2d 1189 at 1214 (D.C.Cir.1980) (italics in original).

**49.** *Id.* at 1214 (footnote omitted). See also *Hercules, Inc. v. EPA*, 194 U.S.App.D.C. 172, 204, 598 F.2d 91, 123 (1978).

**50.** See text *supra* at note 37.