704 F.2d 638
 227 U.S.App.D.C. 122
 NATIONAL ASSOCIATION OF RECYCLING INDUSTRIES, INC., Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Consolidated Rail Corporation, New York Dock Railway, et
al., Intervenors.
 No. 82-1500.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued 24 Feb. 1983.
Decided 5 April 1983.
As Amended April 5, 1983.
 
 Petition for Review of an Order of the Interstate Commerce commission.
 Edward L. Merrigan, Washington, D.C., for petitioner.
 
 
 1
 Craig M. Keats, I.C.C., with whom John Broadley, Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, I.C.C., John J. Powers, III, and Kenneth P. Kolson, Dept. of Justice, Washington, D.C., were on the joint brief, for the United States of America and the I.C.C.
 
 
 2
 Christine A. Pasquariello, Brooklyn, N.Y., of the Bar of the Supreme Court of the State of New York, pro hac vice, by special leave of the Court, with whom Walter M. King, Jr., was on brief, for intervenor, New York Dock Railway, et al. Stuart H. Johnson, Jr., Washington, D.C., also for intervenor.
 
 
 3
 John A. Daily, Philadelphia, Pa., for intervenor, Consolidated Rail Corp.
 
 
 4
 Before WRIGHT and WILKEY, Circuit Judges, and BONSAL,* Senior District Judge, United States District Court for the Southern District of New York.
 
 
 5
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 6
 This case concerns the propriety of an Interstate Commerce Commission (ICC) decision permitting Consolidated Rail Corporation (Conrail) unilaterally to cancel certain joint rates on nonferrous recyclables. For the reasons set out below, we vacate the order in question, instruct the ICC expeditiously to determine that all carriers affected by Conrail's rate changes are in compliance with section 204 of the Staggers Act, 49 U.S.C. Sec. 10731 (Supp.IV 1980), and direct that the rates currently in effect remain in effect, subject to a refund provision. We also direct the ICC to reconsider the aspects of its decision affecting Class III carriers New York Dock Railway and Brooklyn Eastern District Terminal.
 
 
 7
 49 U.S.C. Sec. 10705(e) permits a carrier unilaterally to cancel a joint rate only if it can prove that the cancellation is "consistent with the public interest." 49 U.S.C. Sec. 10705(e) (Supp.IV 1980). The ICC's conclusion that the cancellation was consistent with the public interest blatantly disregards the terms of section 204 of the Staggers Act and the mandate of this court in National Ass'n of Recycling Industries, Inc. v. ICC, 660 F.2d 795 (D.C.Cir.1981) (NARI III ). Section 204 of the Staggers Act, enacted in 1980, directed "all rail carriers [to take, within 90 days,] all actions necessary to reduce and thereafter maintain rates for the transportation of recyclable or recycled materials, other than ... iron or steel," at revenue-to-variable cost ratio levels of 146% or less. 49 U.S.C. Sec. 10731(e) (Supp.IV 1980); NARI III, 660 F.2d at 798. In NARI III this court vacated an ICC order which permitted railroads to comply with section 204 by exempting recyclables from future rate increases, even though the then-existent rates exceeded the 146% ratio level. We very clearly directed that the "railroads are required to immediately reduce rates and, once this has been accomplished, thereafter maintain rates at levels equal to or less than the [146%] ratio level." NARI III, 660 F.2d at 802 (emphasis added).
 
 
 8
 Conrail's efforts unilaterally to cancel its joint rates on nonferrous recyclables and impose single-line rates which it concedes are higher, in some respects, than its share of the previous joint rates came barely two weeks after NARI III. The ICC knew that these new single-line rates would be imposed in conjunction with the single-line rates of other carriers previously parties to Conrail's joint rates, and yet, the ICC did nothing to ensure that the new combination rates would be less than the old joint or combination rates, which in many instances exceeded the 146% limit. Indeed, even now the ICC admits that it does not know what the other carriers are charging.
 
 
 9
 It is obvious that an increase in the rates of one party to a joint or combination rate, unaccompanied by a decrease in the rate of another, must result in an increase in the overall rate charged, regardless of whether the total rate charged is a joint or a combination rate. The rail carriers who were previously parties to Conrail's joint or combination rates may have decreased their rates so that the resultant combination rates are below the 146% level. However, the ICC had no way of knowing this at the time it concluded that Conrail's cancellation was "consistent with the public interest" and it continues to lack the evidence necessary to assure itself that the new combination rates are in compliance. Until the ICC determines that the new rates are in compliance with the requirements of section 204 and NARI III, any determination that a change in the rate structure is in the public interest is necessarily arbitrary, capricious, and not in accordance with law. 5 U.S.C. Sec. 706 (1976).
 
 
 10
 Accordingly, we vacate the ICC's 26 March 1982 order and direct the ICC--as Congress mandated in the Staggers Act and as this court reiterated in NARI III--to determine within 90 days that the rates of all carriers whose rates will be affected by Conrail's cancellation are such that the resultant combination, joint, or other rates are at or below the 146% limit. The ICC informs us that it has initiated this undertaking in Ex Parte No. 394-- Cost Ratio for Recyclables--1980 Determination. If the ICC wishes to complete that proceeding and integrate the results into this proceeding it may do so, but it must complete action in this proceeding within 90 days of the date of this order.
 
 
 11
 Mindful of the limits on our authority to change rates currently in force, see Burlington Northern, Inc. v. United States, --- U.S. ----, 103 S.Ct. 514, 74 L.Ed.2d 311 (1982), we leave the rates currently on file for Conrail and the other carriers in effect, subject however to a refund provision which we now direct the ICC to include in its final order. The ICC must include a refund provision in its final order which ensures that the carriers will not profit unlawfully from the failure of the ICC and the carriers to comply with section 204 of the Staggers Act and this court's mandate in NARI III.
 
 
 12
 Due to the occurrence of a tie vote, the ICC did not decide whether Conrail's cancellation was consistent with the public interest as it related to Class III carriers New York Dock Railway and Brooklyn Eastern District Terminal. We agree with the Second Circuit, New York Dock Railway v. United States, 696 F.2d 32 (2d Cir.1982), that the ICC's failure to arrive at either a positive or negative conclusion on the public interest issue deprives us of jurisdiction to review that aspect of the ICC's order. See 28 U.S.C. Sec. 2342(5) (Supp.V 1981) (court of appeals have jurisdiction to determine the validity of final orders of the ICC). However, because the case is being remanded to the ICC for further proceedings in conformity with this order, we direct the ICC to reconsider the aspects of the order challenged by New York Dock Railway and Brooklyn Eastern District Terminal, noting that three of the five present commission members have yet to consider the issues presented by those Class III carriers.
 
 
 13
 In summary, we vacate the ICC's order of 26 March 1982 and order the ICC to (1) determine within 90 days of the date of this order the proper rates for all carriers, including Conrail, which will bring all rates to which Conrail is a party, joint, combination, or otherwise, down to a level at or below a revenue-to-variable cost ratio of 146%; (2) allow the rates currently on file to remain in effect until a new order issues; (3) include in its final order a refund provision which requires the carriers to refund any excess collected over the new appropriate rates since 1 August 1981, the date on which Conrail's new rates went into effect; and (4) reconsider the issues presented by New York Dock Railway and Brooklyn Eastern District Terminal.
 
 
 14
 It is so ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (Supp.V 1981)