**INTERCITY TRANSPORTATION COMPANY, National Classification Committee and National Motor Vehicle Traffic Association, Petitioners,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 81–1637.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1984.

Decided June .19, 1984.

William W. Pugh, New Orleans, La., for petitioners.

Kathleen V. Gunning, Atty. I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, Henri F. Rush, Associate

Gen. Counsel, I.C.C., and Robert Nicholson, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondents. Kenneth P. Kolson, Atty., U.S. Department of Justice, Washington, D.C., also entered an appearance for respondent USA.

Before TAMM, MIKVA, and STARR, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

This case concerns the reviewability and lawfulness of the Interstate Commerce Commission's (Commission) refusal to institute a declaratory order proceeding. Petitioners assert that the Commission's action was an unexplained departure from precedent as well as an arbitrary and capricious exercise of discretion. The Commission contends that its decision was a nonfinal action committed to agency discretion by law and is therefore unreviewable. Although we find that refusals to institute declaratory order proceedings are subject to judicial review, we conclude that in this case the Commission adequately explained its decision and reasonably exercised its discretion.

I. BACKGROUND

This appeal arises out of a dispute between a carrier, Intercity Transportation Company (Intercity), and its shipper, Exide Safety Systems (Exide).[1] The dispute concerned the proper classification of battery pack cabinets under the National Motor Freight Classification (NMFC).[2] Intercity contended that one NMFC classification applies to battery pack cabinets, and Exide contended that another classification applies.

After an unsuccessful attempt to resolve this dispute informally, Intercity petitioned the Commission to institute a declaratory order proceeding to determine the proper classification. Petition for Declaratory Order, Joint Appendix (J.A.) at 1a–4a. The Commission declined to institute such a proceeding and suggested that Intercity and Exide pursue other remedies. *Intercity Transportation Co.*, ICC Decision No. 37476 (Sept. 16, 1980) (1980 Decision), J.A. at 5a. The Commission subsequently denied a petition for administrative review, *Intercity Transportation Co.*, ICC Decision No. 37476 (Apr. 8, 1981) (1981 Decision), J.A. at 43a–45a, and a petition to reopen the proceedings regarding Intercity's request for a declaratory determination. *Intercity Transportation Co.*, ICC Decision No. 37476 (Aug. 23, 1983) (1983 Decision), J.A. at 71a–75a. In its 1983 Decision, the Commission again suggested pursuit of other remedies and asserted that it had discretion to reserve declaratory order proceedings for disputes of wider industry significance. 1983 Decision, J.A. at 72a–74a.

Petitioners assert before this court that the Commission failed to explain an abrupt departure from its past policy of routinely issuing declaratory relief. Petitioners also contend that the Commission's decision, even if explained, was arbitrary and capricious. The Commission responds that its denial of Intercity's petition was not a final action and accordingly is unreviewable. Alternatively, the Commission contends that its decision is not reviewable because it is committed by law to agency discretion. Finally, the Commission argues that if refusals to institute declaratory order proceedings are reviewable, its decision in this case was not arbitrary and capricious and accordingly must be affirmed. We conclude that the Commission's decision is a final agency action not committed to agency discretion by law. Although the decision at issue is therefore reviewable, we

1. Exide Safety Systems (Exide) is not a party to this action. Petitioners are Intercity Transportation Company (Intercity), and National Classification Committee and National Motor Freight Traffic Association, Inc., who intervened in this action after it was initiated by Intercity.

2. National Motor Freight Classification (NMFC) is a uniform schedule that classifies commodities according to characteristics affecting the commodities' transportability. Shipping rates are based upon the classification assigned the commodity.

affirm the Commission's action as a properly explained and lawful exercise of its broad discretion.

## II. DISCUSSION

### A. Reviewability

#### 1. Finality

■ Only final Commission actions are reviewable by this court under the Administrative Procedure Act (APA), 5 U.S.C. § 704 (1982), and the Hobbs Act, 28 U.S.C. § 2342(5) (1982).[3] Two criteria generally guide finality determinations. First, the action must represent "a terminal, complete resolution of the case before [the agency]." *National Treasury Employees Union v. FLRA,* 712 F.2d 669, 671 (D.C. Cir.1983). Second, the action must either determine rights or obligations, or have some legal consequence. *American Dairy of Evansville, Inc. v. Bergland,* 627 F.2d 1252, 1260 (D.C.Cir.1980). We find that the Commission's decision meets both criteria.

■ First, the Commission's decision not to initiate a declaratory order proceeding is not subject to alteration. Intercity unsuccessfully petitioned the Commission on three separate occasions for the relief it now seeks in this court. Without question, the Commission's denials are not "tentative, provisional, or contingent, subject to recall, revision, or reconsideration ...." *National Treasury Employees Union,* 712 F.2d at 671.

■ Second, the Commission's refusal to issue a declaratory order has legal consequence. Section 554(e) of the APA guarantees petitioners a right to considered review of their request for declaratory relief:

> The agency, ... in its *sound discretion,* may issue a declaratory order to terminate a controversy or remove uncertainty.

5 U.S.C. § 554(e) (1982) (emphasis added). The phrase, "sound discretion," limits the manner in which an agency may determine whether to initiate declaratory order proceedings.[4] Although agencies have signifi-

---

3. The relevant sections of the Administrative Procedure Act (APA) and the Hobbs Act provide respectively:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.... Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsiderations, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (1982).

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend ..., or to determine the validity of—
> ....
> (5) all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title and all final orders of such Commission made reviewable under section 11901(i)(2) of title 49, United States Code.

28 U.S.C. § 2342(5) (1982).

Neither party asserts, nor do we find, any difference between the meaning of "final" agency action as used in the APA and in the Hobbs

Act. *See generally New York Dock Railway v. United States,* 696 F.2d 32, 34 (2d Cir.1982).

4. The legislative history of 5 U.S.C. § 554(e) does not provide definitive guidance on whether Congress intended the phrase, "sound discretion," to limit agencies' authority to decline to issue declaratory orders. Some concern, however, about allowing such decisions to remain entirely in the discretion of agencies is evident in the development of the Administrative Procedure Act (APA). The Senate bill (S. 7) that eventually became the APA was originally introduced with no reference to "sound discretion" in the section governing declaratory orders:

> (d) Declaratory Orders.—The agency is authorized, with like effect as in the case of other orders, to issue a declaratory order to terminate a controversy or remove uncertainty.

S.7, 79th Cong., 1st Sess. § 5(d) (1945), *reprinted in* LEGISLATIVE HISTORY OF THE ADMINISTRATIVE PROCEDURE ACT, S.DOC. No. 248, 79th Cong., 2d Sess. [hereinafter cited as LEGISLATIVE HISTORY] 11, 157 (1946).

Comments were received from administrative agencies and private organizations regarding the original text of S.7. *See* H.R.REP. No. 1980, 79th Cong., 2d Sess. 14 (1946), U.S.Code Cong. Serv. 1946, p. 1195. In June 1945, the Senate Committee on the Judiciary ·published a committee print setting forth a tentatively revised text of S.7 with an explanation of its provisions.

cant discretion in such matters, they are not free to *abuse* that discretion. *See Yale Broadcasting Co. v. FCC*, 478 F.2d 594, 602 (D.C.Cir.), *cert. denied*, 414 U.S. 914, 94 S.Ct. 211, 38 L.Ed.2d 152 (1973).[5] Because the Commission's refusal to institute a declaratory order proceeding had the potential of infringing upon petitioners' statutory right to a reasoned agency disposition of its request, it has sufficient legal consequence to meet the second criterion of the finality doctrine.[6]

In sum, since petitioners have presented a cognizable legal claim arising out of an unalterable Commission decision, we find that decision "final" for the purpose of judicial review.

### 2. Committed to Agency Discretion by Law

■■■ Final agency action may nonetheless be exempt from judicial review where the action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1982). The Commission asserts that decisions concerning the initiation of declaratory order proceedings are entirely discretionary and therefore unreviewable. We begin consid-

eration of the Commission's argument by noting there is a strong presumption in favor of judicial review of final agency action. *WWHT, Inc. v. FCC*, 656 F.2d 807, 815 (D.C.Cir.1981); *National Ass'n of Postal Supervisors v. United States Postal Service*, 602 F.2d 420, 430 (D.C.Cir.1979). *See also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). In *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031 (D.C.Cir.1979), this court outlined three criteria for identifying those cases in which this presumption of reviewability is overcome. Actions are committed to agency discretion where there is little need to safeguard petitioner's interests, review would impair the effectiveness of agency administration, and the disputed issue is not appropriately drawn for judicial review. *Id.* at 1044. The case at hand fulfills none of these criteria and is accordingly reviewable.

First, petitioners have asserted a violation of a statutorily defined legal right and have identified a concrete injury resulting from that violation. Petitioners contend

STAFF OF SENATE COMM. ON THE JUDICIARY, 79th Cong., 1st Sess., *reprinted in* LEGISLATIVE HISTORY at 11 (Comm. Print 1945). The section on Declaratory Orders of the revised text of S.7 included the phrase "sound discretion," apparently in response to concern about unfettered agency discretion:

> [5] (*d*) *Declaratory Orders.—The agency is authorized in its sound discretion, with like effect as in the case of other orders, to issue a declaratory order to terminate a controversy or remove uncertainty.*
>
> ....
>
> Private parties object to leaving the issuance of declaratory orders to agency discretion. However, the phrase "sound discretion" means a reviewable discretion and will prevent agencies from either giving improvident declaratory orders or arbitrarily withholding such orders in proper cases.

LEGISLATIVE HISTORY at 25.

The revised text of § 5(d) of S.7 remained unchanged through the enactment of S.7 on June 11, 1946. *See* 92 CONG.REC. 5,789, 5,791, 5,881, 6,706 (1946). Although both the Senate and House Reports are silent on whether "sound discretion" was meant specifically to prevent agencies arbitrarily from withholding declaratory orders, they do note that the phrase

limits the agencies' authority to improvidently grant such orders. S.REP. No. 752, 79th Cong., 1st Sess. 18 (1945); H.R.REP. No. 1980, 79th Cong., 2d Sess. 31 (1946). Though we recognize that the legislative history does not conclusively resolve the issue before us, we believe the development of S.7, when considered in its entirety, supports our reading of § 554(e).

**5.** This position is firmly supported by the more general principle that authorizing an agency to exercise discretion does not foreclose court consideration of an alleged abuse of that discretion. *Overseas Media Corp. v. McNamara*, 385 F.2d 308, 316 n. 14 (D.C.Cir.1967) (quoting author of APA during Senate debates). *See also* Medical Comm. for *Human Rights v. SEC*, 432 F.2d 659, 673 (D.C.Cir.1970), *vacated as moot*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

**6.** We recognize that the Commission's decision did not define Intercity's or Exide's legal rights and obligations regarding the appropriate classification for Exide's battery pack cabinets. The Commission's order nevertheless has legal consequence because it implicates petitioners' right to a reasonable exercise of agency discretion. *See WWHT, Inc. v. FCC*, 656 F.2d 807, 814–16 (D.C.Cir.1981).

that the Commission's arbitrary refusal to issue declaratory relief may require Intercity and Exide to pursue remedies perhaps less economical and expert than declaratory relief. *See infra* note 9. Moreover, petitioners note that uncertainty regarding the appropriate commodity classification may increase the risk of litigation.[7] Petitioners thus allege both a violation of a specific legal right and a resultant injury, neither of which can be remedied without judicial review.

Second, review in this case will not hinder the effectiveness of agency administration. The scope of our review is necessarily narrow. We may examine the Commission's exercise of discretion, not to evaluate the wisdom of its policy judgment, but only to guard against arbitrary and capricious decisionmaking. *See WWHT, Inc. v. FCC,* 656 F.2d 807, 817 (D.C.Cir.1981). Such limited review of Commission refusals to institute declaratory order proceedings will not unduly hinder the Commission's regulation of interstate commerce. *See Natural Resources Defense Council, Inc.,* 606 F.2d at 1044.

Third, the issue before us is entirely appropriate for judicial review. Section 706(2)(A) of the APA expressly authorizes this court to ensure that the exercise of agency discretion is not without a rational basis. 5 U.S.C. § 706(2)(A) (1982); *WWHT, Inc. v. FCC,* 656 F.2d at 815–16. Moreover, the APA provides this court with the means to determine whether the Commission's discretionary decision is arbitrary and capricious. Section 555(e) commands the Commission to provide a brief statement of the grounds for denial of any written petition made in connection with any agency proceeding. 5 U.S.C. § 555(e) (1982). Such statements in other contexts routinely provide the basis for judicial review of agency action. *Estate of French v.*

*FERC,* 603 F.2d 1158, 1162 (5th Cir.1979). *See also Roelofs v. Secretary of the Air Force,* 628 F.2d 594, 599–601 (D.C.Cir. 1980).

Because review in this case is necessary to protect petitioners' interests, will not impair agency administration, and is expressly authorized by the APA, the strong presumption of reviewability applicable to final agency action is not overridden. Accordingly, we conclude that the Commission's refusal to institute a declaratory order proceeding is not committed to agency discretion and is thus reviewable.

## B. *The Commission's Exercise of Discretion*

■ Petitioners assert that the Commission radically departed from its prior policy of regularly granting declaratory relief without adequately explaining its change in policy. We recognize the familiar principle that "[r]easoned decisionmaking requires an agency to explain changes of policy from past decisions ...." *Continental Air Lines, Inc. v. CAB,* 551 F.2d 1293, 1303 (D.C.Cir.1977). *See Baltimore & Annapolis Railroad v. Washington Metropolitan Area Transit Commission,* 642 F.2d 1365, 1370 (D.C.Cir.1980). In this case, however, we believe the Commission sufficiently explained the reasons for the change in policy alleged by petitioners.[8]

The Commission plainly stated that its refusal to issue declaratory relief was due to a judgment that its limited resources are better allocated to other areas:

> Our refusal to institute a declaratory order ... is based on our experience (1) that rate applicability questions are numerous, exceeding our administrative capacity to act as an arbitrator in all such situations, and (2) that such questions

---

7. The Commission's decision thus is not rendered unreviewable for lack of immediate impact on petitioners. *Cf. South Carolina Elec. & Gas Co. v. ICC,* 734 F.2d 1541 at 1544–1545 (D.C.Cir.1984) (agency action must cause hardship to parties before review is appropriate).

8. The Commission disputes petitioners' threshold presumption that its decision in this case represents a departure from past policy. Because we find that the Commission sufficiently explained its decision, we do not reach the underlying disagreement on whether the alleged change in policy actually occurred.

are frequently best resolved through the managerial discretion of the carrier....

In our view, the best utilization of the Commission's limited resources would be to resolve those commodity classification disputes ... through agency complaints or through court referrals.

1983 Decision, J.A. at 72a. The Commission further explained that it will reserve declaratory order proceedings for those disputes with industry-wide significance and noted alternative remedies currently available to Intercity and Exide. 1983 Decision, J.A. at 71a, 73a, 75a; *see also* 1981 Decision, J.A. at 45a. Given the Commission's discussion of the grounds for its decision in this case and the guidance it offered for future cases, we cannot say the Commission failed to explain adequately its alleged departure from past policy.

■ Petitioners alternatively argue that the Commission's exercise of discretion, even if explained, was arbitrary and capricious. They contest the Commission's decision, in large part, because they find reme-

dies other than declaratory relief unsatisfactory.[9] Petitioners contend that the alternative remedies are less economical than declaratory relief, involve increased risk of costly litigation, and undercut the industry-wide effectiveness of the NMFC.[10] They do not contend, however, that the alternative remedies constitute illegal or unworkable means of resolving the dispute at hand.[11] Rather, petitioners submit simply that "the declaratory order is .often the most appropriate means of settling [classification] disputes." Brief for Petitioners at 35.

■ Petitioners' claim thus challenges the wisdom, not the lawfulness, of the Commission's decision. The Commission has made a judgment that the institution of a declaratory order proceeding to resolve this private classification dispute would be an imprudent and .inefficient allocation of agency resources. In making this policy judgment, the Commission has articulated coherently those circumstances where it

---

**9.** The Commission suggested four alternative remedies. First, if Exide believes it has been paying excessive charges, it may file a formal complaint with the Commission alleging that the carrier has applied the wrong classification. 49 U.S.C. §§ 11701(b), 11705(b)(3), 11705(c)(1) (Supp. V 1981). Second, if Intercity believes Exide has been paying insufficient charges, Intercity may file a civil action in court to collect undercharges. *Id.* § 11706(a). The court then could refer the matter regarding the reasonableness of the classification to the Commission. 28 U.S.C. § 1336(b) (1982). Third, disputes respecting future commodity classifications may be resolved by filing a specific tariff for the commodity in question. Neither the shipper nor the carrier need rely on the NMFC. Intercity Transp. Co., ICC Decision No. 37476 (Aug. 23, 1983) (1983 Decision), Joint Appendix (J.A.) at 71a, 73a. Finally, the Commission encouraged shippers and carriers to negotiate an agreement regarding the appropriate classification. *Id.*

**10.** Petitioners also contend that uncertainty regarding the truly appropriate classification will increase the risk of incurring criminal liability under the Interstate Commerce Act (Act). *See* 49 U.S.C. §§ 11903, 11904 (Supp. V 1981). The Commission's 1983 Decision properly notes, however, that one must *knowingly* or *willfully* violate the Act before criminal liability will attach. *Id.* It is indeed unlikely that a reasonable interpretation of an ambiguous classification

uniformly applied to the disputed commodities could constitute a knowing or willful violation of the Act. *See, e.g., United States v. United States Steel Corp.,* 645 F.2d 1285, 1294–97 (8th Cir.1981). Accordingly, we do not believe pursuit of remedies other than declaratory relief involves a significant risk of criminal liability for the well-intentioned carrier or shipper. The prospect of such liability, therefore, does not undercut the availability or effectiveness of alternative remedies in the absence of declaratory order proceedings.

**11.** Petitioners do argue, however, that the Commission's suggestion for negotiation, *see supra* note 9, was an invitation to violate 49 U.S.C. § 10761(a) (Supp. V 1981). Section 10761(a) requires that a carrier "not charge or receive a different compensation for [the] transportation or service than the rate specified in the tariff ...."

We do not believe petitioners have fairly characterized the Commission's suggestion. The Commission, with unassailable clarity, suggested not that shippers and carriers transgress § 10761(a), but that they adopt a *cooperative,* instead of an *adversarial,* posture in determining the most accurate classification for a given commodity. 1983 Decision, J.A. at 73a & n. 4. We find no reason here to criticize the Commission for promoting informal, cooperative, and good-faith dispute resolution.

considers the institution of declaratory order proceedings to be appropriate.[12] 1983 Decision, J.A. at 71a, 73a, 75a. Because the Commission has supplied a rational basis for its decision, we cannot say that its refusal to grant declaratory relief was arbitrary or capricious.[13]

### III. CONCLUSION

For the foregoing reasons, we affirm the Commission's decision not to institute a declaratory order proceeding to resolve Intercity's classification dispute.

---

**12.** The Commission certainly has not announced a policy of never instituting declaratory proceedings. Such a policy could well constitute an abuse of discretion. *See, e.g., United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); *Payne v. Block,* 714 F.2d 1510, 1520 n. 33 (11th Cir.), *amended on other grounds,* 721 F.2d 741 (11th Cir.1983).

**13.** As noted above, we may not question the wisdom of an agency's judgment in matters of administrative policy, especially when that judgment pertains to the allocation of agency re-

sources and efficient operating procedures. *American Trucking Ass'ns, Inc. v. United States,* 627 F.2d 1313, 1320–21 (D.C.Cir.1980). *See also Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 524–25, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). Whether classification disputes are best resolved through agency complaints, court referrals, or declaratory orders is one such judgment. Accordingly, our review is limited to determining whether the Commission's decision was so devoid of reason as to be arbitrary and capricious.