672 F.2d 146
 217 U.S.App.D.C. 293
 BALTIMORE GAS AND ELECTRIC COMPANY, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Southern Electric System, Association of American Railroads,
Intervenors.
 No. 81-1324.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 1, 1982.
Decided March 2, 1982.
 
 Leonard M. Trosten, Washington, D. C., with whom Harry H. Voigt, Michael F. McBride and Mindy A. Buren, Washington, D. C., were on the brief, for petitioner Baltimore Gas and Elec. Co. and amicus curiae Edison Elec. Institute.
 Evelyn G. Kitay, Atty., I.C.C., Washington, D. C., with whom Richard A. Allen, Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, I.C.C., John J. Powers, III, and Kenneth Kolson, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents.
 John R. Molm, Robert P. Edwards, Jr., and Michael Andre Donnella, Atlanta, Ga., were on the brief for intervenor Southern Elec. System.
 Stephen Ailes, Betty Jo Christian and Steven Reed, Washington, D. C., were on the brief for intervenor the Ass'n of American Railroads.
 Before WALD, MIKVA and GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge GINSBURG.
 GINSBURG, Circuit Judge:
 
 
 1
 The Staggers Rail Act of 1980, Pub.L.No.96-448, 94 Stat. 1895 (codified in scattered sections of 11, 45, & 49 U.S.C.) (Staggers Act), significantly amended the Interstate Commerce Act to provide for financial assistance to railroads and to deregulate substantially the setting of railroad rates. In February 1981, an attorney who practices before the Interstate Commerce Commission (ICC or Commission), James W. Lawson, petitioned the Commission to address points of uncertainty concerning the meaning of Section 229 (49 U.S.C. § 10701a note) (the "Savings provisions") of the Staggers Act. Interested shippers, principally electric utilities who envisioned the possibility of large increases in their future shipments of coal, supported Lawson's petition and invited further clarification of Section 229. In March 1981, the ICC issued an interpretive order answering questions raised in the petition and supporting comments. Petition for Declaratory Order-Existing Railroad Rates, 364 I.C.C. 749 (1981). Baltimore Gas and Electric Co. (BG&E) seeks our review of one of the answers the ICC's interpretive order supplied.[1]
 
 
 2
 Both BG&E and the Commission acknowledge that they have placed before us, in advance of the development of any concrete case, the bare text of a statutory provision and legal argument as to its meaning. The parties further recognize that no imminent harm confronts BG&E as a result of the Commission's interpretation. In response to the court's inquiry at argument concerning the ripeness of the case for judicial review, counsel for BG&E stated he would prefer to await a concrete controversy before seeking a court ruling on the ICC's March 1981 interpretive order.[2] However, he noted the 60-day limit on petitions for judicial review of ICC orders. See 28 U.S.C. § 2344. This limitation, he feared, might be read to command a petition to contest the Commission's interpretation now or never.
 
 
 3
 We hold that the Commission's interpretive order, which currently threatens no hardship to BG&E, is not reviewable on the petition before us. Because review is not available now, BG&E and other similarly situated shippers will not be barred, if and when a fact-based controversy eventuates, from challenging the Commission's interpretation.
 
 I.
 
 4
 Prior to October 1, 1980, the effective date of the Staggers Act, affected shippers generally had the right to challenge the reasonableness of existing rail rates at any time. See 49 U.S.C. § 11701. By contrast, the Staggers Act largely insulates rates from challenge.[3] ICC oversight of rates alleged to be unreasonably high is confined to transportation over which the carrier has "market dominance." 49 U.S.C. § 10701a(b)(1). Even as to rates on "market dominant" traffic, a rate in existence on the effective date of the Staggers Act is immune from attack unless challenged by a shipper's complaint filed within a 180-day period commencing on October 1, 1980. Staggers Act § 229(a). A rate not challenged within this 180-day period becomes a "base rate," which may be adjusted upward within certain statutorily-prescribed limits[4] without further ICC surveillance. Congress provided an exception to the 180-day limitation to permit later challenges with respect to "paper rates." Specifically, Section 229(c) of the Staggers Act permits a challenge to
 
 
 5
 any rate under which the volume of traffic moved during the 12-month period immediately preceding the effective date of this Act did not exceed 500 net tons and has increased tenfold within the 3-year period immediately preceding the bringing of a challenge to the reasonableness of such rate.
 
 
 6
 The petition before us challenges the Commission's interpretation of this provision. No other issue is tendered for our review.
 
 
 7
 BG&E maintains that the "paper rate" exception defined in Section 229(c) permits a shipper to challenge a rate in existence on October 1, 1980, without regard to the total traffic that may have moved under the rate, so long as the challenging shipper did not ship more than 500 net tons under the rate during the 12-month period immediately preceding October 1, 1980, and the volume of that shipper's shipments increased tenfold thereafter. The ICC, in its March 1981 interpretive order, disagreed. The Commission declared: "It seems clear to us that the 500 ton/tenfold conditions refer to the aggregate of all traffic moving under the rate," not to "the traffic of the (individual) shipper that desires to challenge the rate." 364 I.C.C. at 752.
 
 
 8
 BG&E does not assert that it is now positioned to satisfy the Section 229(c) test as it reads the provision, nor does it identify any current rate as unreasonable. Thus, it seeks our preview whether Section 229(c) will provide an avenue for relief should it some day fall within the "paper rate" exception, as it interprets that exception, and should it at that time find itself subjected to a charge it regards as unreasonable. Since BG&E labors under no current hardship by reason of its disagreement with the ICC concerning the meaning of Section 229(c), and can now complain only of a hypothetical state of affairs, we must decline consideration of its petition.II.
 
 
 9
 As this court has had several occasions to observe, Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), is the pathmark decision regarding the ripeness of agency orders for judicial review. See, e.g., Diamond Shamrock Corp. v. Costle, 580 F.2d 670 (D.C.Cir.1978); Continental Air Lines, Inc. v. CAB, 522 F.2d 107, 122, 124-28 (D.C.Cir.1975) (en banc). Abbott Laboratories presented for judicial review Food and Drug Administration regulations interpreting provisions of the 1962 amendments to the Food, Drug and Cosmetic Act that required drug labels and promotional material to indicate the generic name of a drug as well as the trade name. The Court stated a two-fold test for ripeness, requiring evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515. Applying that test, the Court found the "generic name" regulations ripe for review. As to the second aspect of the ripeness test, the Court pointed out that the regulations had an immediate impact on the business of the complainant drug manufacturers: they would sustain extensive costs in complying with the agency's specifications or, if they did not comply, they would risk enforcement with attendant criminal penalties. Clarifying the reach of Abbott Laboratories, the Court held, the very same day, in Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), that an agency regulation was not subject to pre-enforcement review when the adverse effect on the complainants was "minimal" because their business activities would not be affected significantly by the regulation.
 
 
 10
 We need not protract this opinion by rehearing decisions applying the Abbott Laboratories analysis to various agency actions. See, e.g., Midwestern Gas Transmission Co. v. FERC, 589 F.2d 603, 617-25 (D.C.Cir.1978) (per curiam). Further, we can assume that the first, "fitness" for judicial decision, branch of the Abbott Laboratories test is not a barrier to adjudication. "(T) he issue tendered is a purely legal one: whether the statute was properly construed by the (Commission)." 387 U.S. at 149, 87 S.Ct. at 1515. "(B)oth sides have approached this case as one purely of congressional intent." Id. Nor do we consider review excluded for lack of a final agency decision or simply because the order in question is "interpretive." See Independent Bankers Association v. Smith, 534 F.2d 921, 926-30, cert. denied, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976). However, we hold, without reservation, that the second, "hardship to the parties," strand of Abbott Laboratories is not met in this case.
 
 
 11
 The ICC's interpretation of Section 229(c) calls for no change in BG&E's conduct of its affairs. See 387 U.S. at 153, 87 S.Ct. at 1517. The Commission's order, since it lacks current impact on BG&E and others similarly situated, is inappropriate for judicial review at this stage. See id. at 152, 87 S.Ct. at 1517. The ICC's opinion, we stress, does present a question ultimately appropriate for judicial determination. But that determination must abide a developed case properly timed.[5] At this juncture, the future impact of Section 229(c) on BG&E remains speculative; the ICC's interpretation is not yet felt by this shipper "in a concrete way." See 387 U.S. at 148, 87 S.Ct. at 1515. If and when the traffic of BG&E or any other shipper warrants recourse to Section 229(c), as BG&E reads that provision, appropriate proceedings may be instituted before the Commission, and the Commission's disposition of that controversy will be subject to judicial review.
 
 
 12
 Pending the development of such a controversy, BG&E need not fear preclusion by reason of the 60-day stipulation in 28 U.S.C. § 2344. A time limitation on petitions for judicial review, it should be apparent, can run only against challenges ripe for review. See Investment Company Institute v. Board of Governors of the Federal Reserve System, 551 F.2d 1270, 1280-81 (D.C.Cir.1977). In the event that BG&E, at some future date, should have a ripe case fitting within its interpretation of Section 229(c), it can file a complaint with the Commission and, if the complaint is rejected, seek our review within 60 days of that Commission order. In the course of that review, the Commission's interpretation of Section 229 would be subject to our scrutiny. See Geller v. FCC, 610 F.2d 973, 977-78 (D.C.Cir.1979) (per curiam); Functional Music, Inc. v. FCC, 274 F.2d 543, 546 (D.C.Cir.1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 81 (1959).
 
 CONCLUSION
 
 13
 The petition for review tenders an issue not ripe for judicial consideration. Accordingly, the petition is dismissed.
 
 
 14
 It is so ordered.
 
 
 
 [1]
 Edison Electric Institute, the association of the investor-owned electric utility industry, joined as amicus curiae in BG&E's brief. Southern Electric System intervened on behalf of the petitioner and the Association of American Railroads intervened on the side of the Commission
 
 
 [2]
 Although neither BG&E nor the ICC raised the ripeness question, we are obliged to consider that threshold issue since it "involve(s), at least in part," the limits of judicial power. See Regional Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974); L. Tribe, American Constitutional Law § 3-13 (1978). But see Vining, Direct Judicial Review and the Doctrine of Ripeness, 69 Mich.L.Rev. 1443 (1971)
 
 
 [3]
 The principal rate deregulation provisions of the Staggers Act are Sections 201(a), 202, and 203(a), 49 U.S.C. §§ 10701a, 10709, 10707a
 
 
 [4]
 Staggers Act § 203(a), 49 U.S.C. § 10707a
 
 
 [5]
 See K. Davis, Administrative Law Treatise § 21.00, at 673-74 (1970 Supp.) (distinguishing reviewability from ripeness)