**FARMERS EXPORT COMPANY, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents,**

**Atchison, Topeka and Santa Fe Railway Co., et al., Intervenors.**

**No. 83–2306.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1984.

Decided April 5, 1985.

As Amended April 5, 1985.

---

Richard S.M. Emrich, Chicago, Ill., for petitioner.

Charles Alan Stark, Atty. I.C.C., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., John Broadley, Gen. Counsel, Lawrence H. Richmond, Deputy Associate Gen. Counsel, I.C.C., John J. Powers, III and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Guy Vitello, Chicago, Ill., with whom Richard E. Weicher, Chicago, Ill., and Michael E. Roper, Dallas, Tex., were on the brief, for intervenors Atchison, Topeka and Santa Fe Railway Co., et al., Robert B. Batchelder, Omaha, Neb., also entered an appearance for intervenors.

Before BORK and SCALIA, Circuit Judges, and GASCH, District Judge.*

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Petitioner, Farmers Export Company ("FEC"), appeals from the refusal of the Interstate Commerce Commission ("ICC") to reopen and reconsider two decisions.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

The first, dated April 3, 1981, is said by FEC to contain a material error that mistakenly limited the number of railroad cars for which demurrage refunds could be recovered by FEC from five railroads.[1] The second decision, dated May 7, 1981, used a method for calculation of interest on the refund received that did not take into account fluctuations in the prevailing rate of interest over time and is claimed to have denied FEC an equitable recovery. We accept jurisdiction pursuant to 28 U.S.C. §§ 2321(a), 2342(5) (1982) to hear the interest question and affirm the Commission. We decline jurisdiction as to the demurrage refund issue since we find the refusal to reopen not final.

## I.

FEC is a farmer cooperative dealing in the export of grain. On December 27, 1977, an explosion rendered FEC's Galveston, Texas, grain elevator permanently inoperable. At the time of the explosion, 519 rail cars were waiting to be unloaded, and approximately 1,174 additional cars were en route to the elevator.[2] Under ICC rules, FEC was required to pay a demurrage charge of $481,790 on the cars detained at Galveston.

Demurrage charges are imposed on shippers and receivers when they detain rail cars beyond a specified period of "freetime."[3] *Dana Corp. v. ICC*, 703 F.2d 1297, 1303 (D.C.Cir.1983). These charges consist of two elements: (1) compensation to the carrier for use of its rail car, and (2) a penalty to act as an incentive to return the car promptly to common carriage service. *Id.* If the shipper can show "that it was not the proximate cause of the detention and that it exercised due diligence in releasing or attempting to release the railroad equipment" promptly, the penalty portion of the demurrage charge should be refunded to the shipper. *Prince Manufacturing Co. v. Norfolk & Western Ry.*, 356 I.C.C. 702, 705 (1978). The portion of the demurrage charge in excess of the railroad's per diem charge plus 20% for incidental expenses is deemed to be the penalty amount. *Prince Manufacturing*, 356 I.C.C. at 708; *Ormet Corp. v. Illinois Central R.R.*, 341 I.C.C. 647, 651 (1972).

FEC filed a complaint with the Commission on September 11, 1978 seeking, it says, refund of the penalty portion on *all* the cars detained at its Galveston elevator. Joint Appendix ("J.A.") at 1. The ICC, in a decision dated April 3, 1981, awarded a refund, but construed the complaint as seeking a refund only for cars arriving after the explosion. The Commission's order stated that,

> [FEC] here seeks relief only from the penalty portion of demurrage accruing on cars arriving at Galveston *after* the explosion....

*Farmers Export Co. v. Atchison, Topeka & Santa Fe Ry.*, 364 I.C.C. 831, 836 (1981) (emphasis in original). The Commission then ordered that,

> [d]efendants should remit to complainant the penalty portion of demurrage charges collected from the complainant.

*Id.* at 838.

According to FEC, the ICC ruling granting only a refund for after-arriving cars

---

**1.** The rail carriers are: The Atchison, Topeka & Santa Fe Railway Company; Burlington Northern Railroad Company, as successor to the Forth Worth and Denver Railway Company; William M. Gibbons, Trustee for the Property of Chicago, Rock Island & Pacific Railway Company, Debtor; Missouri-Kansas-Texas Railway Company; and Missouri Pacific Railroad Company.

**2.** Petitioner states that the number of cars en route was 1,252 while the respondent argues it was 1,174. The actual number is yet to be determined when the railroads file a supplemental accounting before the Commission.

*Farmers Export Co. v. Atchison, Topeka & Santa Fe Ry.*, 364 I.C.C. 831, 836, 838 (1981).

**3.** Demurrage charges are imposed for detention of cars by the ICC on behalf of railroads as a means of encouraging more effective use of equipment in common carriage service. The ICC has jurisdiction over demurrage charges. Interstate Commerce Act, 49 U.S.C. §§ 10750, 11121 (1982); *see also* Remittance of Demurrage Charges, 349 I.C.C. 411, 415 (1975). The tariffs allow for two free days for unloading. The charges then become $10.00 per day for the four days following free time, $20.00 for each of the next two days, and $30.00 per day thereafter.

resulted from a misreading of FEC's complaint, an oversight, or a typographical error. Instead of petitioning to reopen the case to amend the opinion, FEC decided to negotiate the matter with the railroads. The railroads, however, appealed the award to the United States Court of Appeals for the Seventh Circuit. They argued that a proportion of the demurrage was bound to accrue on the cars arriving after the explosion due to pre-existing congestion and therefore should not be refunded. FEC intervened on behalf of the Commission arguing that the Commission's award to it was proper but made no mention of the Commission's alleged error in limiting the penalty refund to after-arrived cars. The court upheld the Commission's ruling stating that,

> [a]lthough it might be that the Commission could itself adopt such a proportional rule, we cannot say that it was compelled to do so in this case in which the refund pertains only to penalty demurrage accruing on cars arriving at Galveston *after* the explosion.

*Atchison, Topeka & Santa Fe Ry. v. ICC,* 687 F.2d 912, 917 (7th Cir.1982) (emphasis added).

Following the Seventh Circuit's decision the railroads agreed to refund the penalty portion of the demurrage only on the cars arriving after the explosion. It being too late to appeal from the Commission's order directly, on September 29, 1982, FEC petitioned the ICC to reopen its April 3, 1981, decision in order to correct the alleged mistake and allow a refund for all cars regardless of arrival date. J.A. at 265. On October 5, 1981, FEC petitioned to reopen the Commission's May 7, 1981, decision that limited the interest award on the refund. *Id.* at 219. The Commission, operating with only four of its seven members, was

unable to agree on the disposition of the demurrage refund petition. The Commission, however, unanimously refused to reopen the case to revise the method used to calculate interest on the award. This petition followed.

## II.

■ This case is before us on appeal from the Commission's refusal to reopen the April 3, 1981, and May 7, 1981, decisions and not from those decisions themselves. The latter are not now open to review by this court, the time for appealing them having long since passed.[4] The Commission contends that the present petition is merely a collateral attack designed to circumvent the finality of the original agency decisions. We do not decide that question because we find the Commission's refusal to reopen the demurrage refund decision not final and, therefore, not reviewable.

In its consideration of FEC's September 29, 1982 petition to reopen, the Commission, with only four of seven seats occupied, divided 2 to 2 and stated,

> [t]he Commission failed to reach a majority decision on the disposition of this petition. Accordingly, the proceeding will not be reopened on these grounds.

*Farmers Export Co. v. Atchison, Topeka & Santa Fe Ry.,* No. 37017, at 4 (I.C.C. Nov. 4, 1983); J.A. at 332. This court has previously held that a tie vote by the Commission is not final action since there can be no final decision where a majority of the Commission has failed to agree on the merits of the petition. *National Association of Recycling Industries v. ICC,* 704 F.2d 638, 640 (D.C.Cir.1983); *New York Dock Ry. v. United States,* 696 F.2d 32, 34 (2d Cir.1982).

---

**4.** On June 10, 1981, the railroads' petitions to reopen and requests for stay were denied. *Farmers Export Co. v. Atchison, Topeka & Santa Fe Ry.,* No. 37017 (I.C.C. June 10, 1981); J.A. at 216. This decision was served on July 28, 1981 at which point the Commission's April and May orders became administratively final. Under 28 U.S.C. § 2344 (1982), the parties had sixty days in which to appeal the Commission's order.

FEC did not seek review of the April 3 decision until some fourteen months after it was final (July 28, 1981 to September 29, 1982) and the May 7 decision until 69 days after it was final (July 28, 1981 to October 5, 1981). The time limits imposed by section 2344 cannot be circumvented by filing a subsequent petition to reopen. *Provisioners Frozen Express, Inc. v. ICC,* 536 F.2d 1303, 1305–06 (9th Cir.1976).

■ By failing to reach a decision on the merits the Commission's decision does not impose an obligation, deny a right, or fix any legal relationship. *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 241–43, 101 S.Ct. 488, 493–95, 66 L.Ed.2d 416 (1980); *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970); *ICC v. Atlantic Coast Line R.R.,* 383 U.S. 576, 602, 86 S.Ct. 1000, 1015, 16 L.Ed.2d 109 (1966); *Intercity Transportation Co. v. United States,* 737 F.2d 103, 106 (D.C.Cir.1984). FEC argues that the tie vote fixes the legal relationship by leaving the April 3, 1981, decision intact. Reply Brief of Petitioner at 6. This is certainly not so. The legal relationship in that decision was fixed long before the petition at issue here was filed. The only conclusion to be drawn, therefore, is that the Commission has not definitively acted on FEC's request to reopen and no decision of the Commission timely contested by FEC was left intact as a direct result of this tie vote. *Cf. Ford Motor Co. v. ICC,* 714 F.2d 1157, 1163 (D.C.Cir.1983) (full Commission's divided vote left the decision of a lower Division as the Commission's final judgment).

FEC argues that the Commission's failure to act is final and reviewable. Reply Brief of Petitioner at 6, 9. In certain circumstances agency inaction may have the same effect, and be treated, as a final decision. *E.g., Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1099 (D.C.Cir.1970). A tie vote that could not be broken in the foreseeable future might conceivably be treated as reviewable. We need not decide that because this case does not present such a situation. The ICC now has a full membership of seven commissioners and a final decision appears to be available to FEC.[5] If FEC petitions once more, as the Commission's rules allow, 49 C.F.R. § 1115.4 (1984), the Commission states that it will entertain the motion. It is thus evident that the tie vote here does

not have "the same impact on the rights of the parties as denial of relief." *Id.*

We hold, therefore, that the Commission's tie vote is not final.

### III.

■ The Commission unanimously denied FEC's petition to reopen the decision denying its claim for recalculation of interest. Petitions to reopen previously final agency decisions are to be granted only in the most extraordinary circumstances. *E.g., Mobil Oil Corp. v. ICC,* 685 F.2d 624, 631–32 (D.C.Cir.1982); *RSR Corp. v. FTC,* 656 F.2d 718, 721 (D.C.Cir.1981). To determine whether the Commission's refusal to reopen the interest rate claim was an abuse of discretion warranting reversal by this court, we must find that petitioner made an adequate showing that there was "material error, new evidence, or substantially changed circumstances." 49 U.S.C. § 10327(g)(1) (1982); 49 C.F.R. § 1115.4 (1984). None of these has been shown to exist here.

Petitioner claims that the Commission erred by refusing to grant a rate of return that tracked the fluctuations in interest rates on 91-day, 13-week Treasury bills. Grant of a fluctuating rate is said to be the only equitable course. The Commission's regular practice however, is to award interest in all complaint cases calculated at the 91-day, 13-week Treasury bill rate prevailing on *"the date the first allegedly unlawful charge is paid."* Revised Procedures to Calculate Interest Rates, 42 Fed.Reg. 20,701 (1977) (emphasis added). *See also Southern Pacific Transportation Co. v. San Antonio, Texas,* 748 F.2d 266 (5th Cir.1984). This fixed rate of interest was established as the most equitable for both parties. It treats the payment as a loan at a fixed rate. Petitioner argues that this method is unfair because it allows the railroads to use FEC as a "low-interest bank." Brief of Petitioner at 36. This, however,

---

5. The Commission has seven seats. Only four seats were filled at the time of the tie vote. Subsequently, on September 6, 1984, the Senate confirmed three Commissioners to fill the vacancies. 130 Cong.Rec. S10,813 (daily ed. Sept. 6, 1984).

can only be argued in hindsight. There is, obviously, a risk to the parties in fixing the interest rate at any particular date. Had rates dropped instead of rising, FEC would have benefitted and the railroads might be here contending for a fluctuating rate. FEC, presumably, would not. In that case, the railroads could say that they were forced to use a high-interest bank. The fact that there is some risk, just as there would be on an actual bank loan, does not invalidate the Commission's practice.

 The fluctuation of interest rates was before the Commission at the time of its initial decision. The continuing fluctuation of rates alleged by petitioner here is not new evidence or sufficient to substantially change the circumstances of this case. The rates on 91-day, 13-week Treasury bills had risen as high as 16.67% before the May 7, 1981, decision. Since that time the highest rate has been 16.75%, hardly a significant difference. *See* Brief of Petitioner at Appendix C. Indeed, the interest immediately prior to the May decision created a greater disparity between it and the rate granted than exists now. *See id.*[6] In any event, the rate of interest applied to refunds by the Commission is entirely discretionary. Commission policy formerly imposed a 4% interest rate on reparations regardless of the prevailing market rate. *Christenson Bros. Feed Co. v. Great Northern Ry.*, 303 I.C.C. 45, 46 (1958). The Commission later adopted the 91-day, 13-week Treasury bill rate to better reflect economic reality. 42 Fed.Reg. 20,-701 (1977). Indeed, it has been established in this court that the Commission has discretion to deny all pre-judgment interest on

a reparations award. *See, e.g., George Allison & Co. v. ICC*, 107 F.2d 180, 185 (D.C.Cir.1939), *cert. denied*, 309 U.S. 656, 60 S.Ct. 470, 84 L.Ed.2d 1005 (1940). Several courts have held that the Commission has wide discretion in granting interest on awards and may grant interest at rates above or below the prevailing rate. *Bangor & Aroostook R.R. v. ICC*, 574 F.2d 1096, 1111 (1st Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978); *see also International Paper Co. v. Delaware & H.R. Corp.*, 73 F.Supp. 30, 35–36 (N.D.N.Y.1938); *Christenson Bros. Feed Co.*, 303 I.C.C. at 46. If the Commission has the power to deny interest awards entirely or award interest at rates below the prevailing rates, it follows that the Commission could not have abused its discretion if the rate set in this case becomes, due to the fluctuations in the market, less attractive to FEC.

Further, FEC was the party that asked for interest to be computed in accord with Commission policy. In the April 3, 1981, decision, the Commission failed to award interest on the refund. FEC petitioned the Commission to correct its decision and award interest pursuant to the Revised Procedures to Calculate Interest Rates, 42 Fed.Reg. 20,701 (1977). *See* J.A. at 211. As discussed above, *supra* p. 737, Commission practice under that policy statement was to award interest at the prevailing rate on 91-day, 13-week Treasury bills at *"the date the first allegedly unlawful charge is first paid."* 42 Fed.Reg. 20,701 (1977) (emphasis added); *see also Southern Pacific* 748 F.2d at 274–76. The Commission has consistently followed this policy.[7]

---

**6.** Likewise, "the unexpected passage of time," Reply Brief of Petitioner at 15, which was due to typical vicissitudes of litigation cannot be classified as a substantial change in circumstances.

**7.** *E.g.,* Increases in Freight Rates & Charges, 365 I.C.C. 193, 234–35 (1981); *Kansas City Power & Light Co. v. Kansas City Southern Ry.*, 361 I.C.C. 848, 855 (1979); *Westinghouse Electric Corp. v. Penn Central Transportation Co.*, 359 I.C.C. 389, 396 (1979); Interstate Application of Authorized General Rate Increases, 359 I.C.C. 295, 311 & n. 11 (1979); *Transnuclear, Inc. v. Illinois Central*

*Gulf R.R.,* 357 I.C.C. 574, 578 (1978); *Administrator of General Services v. Burlington Northern, Inc.,* 357 I.C.C. 232, 243 (1977); *Halliburton Co. v. Alaska R.R.,* 355 I.C.C. 801, 809 & n. 4 (1977); *ASG Industries, Inc. v. Aberdeen & Rockfish R.R.,* 355 I.C.C. 1, 8 & n. 5 (1977). FEC argues that Congress intended the 91-day, 13-week Treasury bill rate to be used only in investigation and suspension cases. Brief of Petitioner at 25, 31–32. In those cases the Commission is required to render a decision in five to eight months. FEC finds a "salient difference" between those cases and complaint cases,

FEC must have been aware of this equitable rule and the manner in which it was applied when FEC sought to use it to recover interest.

FEC puts forward several other minor arguments to support its position on the interest rate issue. We find them unpersuasive and think they require no discussion.

The Commission's failure to reopen its demurrage refund decision is not final. We therefore dismiss the appeal from that portion of the November 4, 1983, decision. The part of the Commission decision denying the motion to reopen the interest rate issue is affirmed.

*It is so ordered.*

like this one, that can take far longer to resolve. Because of the shorter time period, FEC argues that it is less likely that interest rates on 91-day, 13-week Treasury bills would fluctuate signifi-

cantly. *Id.* The argument is beside the point since Congress did not specify a rate for cases like this and since, as we have said, the Commission has very broad discretion in fixing rates.