**RATON GAS TRANSMISSION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 87–1021.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 14, 1987.

Decided July 29, 1988.

Eugene Threadgill, Washington, D.C., for petitioner.

Joshua Z. Rokach, F.E.R.C., with whom Catherine C. Cook, General Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent. Hanford O'Hara, F.E.R.C., Washington, D.C., also entered an appearance for respondent.

Before ROBINSON, GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This petition for review arises from an unsuccessful attempt by Raton Gas Transmission Company (Raton) to obtain relief from a $4,000 fee charged by the Federal Energy Regulatory Commission. The fee was exacted as recompense to the Commission for processing a filing in which Raton sought a reduction in the rates at which it sells natural gas. The principal question before us is whether Raton's effort is an untimely attack upon a regulation adopted by the Commission more than two years before the present controversy emerged. We find that part of Raton's challenge is jurisdictionally timely and on the merits is viable. We therefore remand this case to the Commission for further consideration.

I

In 1986, Raton sought the Commission's leave to pass on to its customers a decrease in the cost of its gas.[1] Its filing, termed a "Purchased Gas Adjustment" (PGA), was submitted conformably with Commission regulations promulgated under the Natural Gas Act.[2] These regulations require gas

---

1. Letter from Raton Gas Transmission Company to Federal Energy Regulatory Commission, Joint Appendix (J. App.) 1.

2. See 15 U.S.C. §§ 717–717w (1982). Natural gas pipeline companies wishing to alter their rates are required to initiate what frequently becomes a lengthy proceeding before the Commission under § 4 of the Act. *Id.* § 717c. Commission regulations, however, allow pipelines to bypass this proceeding with respect to their costs for purchased gas by filing a PGA clause with the Commission and securing its approval. 18 C.F.R. § 154.38 (1987). Thus PGA filings, while less onerous than § 4 proceedings, do

companies to make PGA filings every six months to reflect changes in their gas costs.[3] Raton owns only one pipeline, and its filing was only six pages long.[4]

The Independent Office Appropriations Act[5] authorizes the Commission to charge a fee for every service and benefit it provides to those it regulates. Accordingly, in *Order No. 361* in 1984,[6] the Commission set fees therefor, including processing of PGA filings. In compliance with the fee schedule, Raton enclosed with its filing a check for $2,300, which had been the standard charge for processing PGA filings.[7] To its dismay, however, Raton was later advised by the Commission that shortly before the filing, the fee for this service had increased to $4,000.[8] Raton paid the remaining amount under protest.[9]

Raton later moved for relief.[10] Raton claimed that the Commission had no authority to charge a fee for a PGA filing seeking a reduction, as opposed to an increase, in rates.[11] In the alternative, Raton asked the Commission to establish a fee reasonably related to the actual cost of the staff review of Raton's filing.[12] The Commission rebuffed Raton on both counts,[13]

and subsequently denied Raton's request for rehearing.[14] This petition for review followed.

## II

Raton argues that the higher fees currently charged do not accurately reflect the cost to the Commission of processing Raton's PGA filing.[15] Raton also contends that PGA filings envisioning reductions in rates do not confer any "special benefit" on Raton as required by the Independent Office Appropriations Act.[16] The Commission replies that the issues raised by Raton were resolved more than three years ago by *Order No. 361* and thus are beyond the pale of judicial review.[17] The Commission also contends that most of these issues have been squarely addressed and decided in its favor by the Tenth Circuit.[18]

As the Commission points out, *Order No. 361* was promulgated on February 9, 1984, but Raton's motion for relief was not filed until March 20, 1986, long past the 60–day period allowed for judicial review of Commission orders promulgated under the Nat-

---

necessitate Commission processing and approbation.

**3.** 18 C.F.R. § 154.38 (1987). While the regulations themselves do not seem to insist upon filings every six months, both parties assert that Raton is obliged to file on a semi-annual basis. Brief for Petitioner at 4 n. 3; Brief for Respondent at 3.

**4.** J.App. 1–6.

**5.** 31 U.S.C. § 9701 (1982).

**6.** 49 Fed.Reg. 5083 (Feb. 10, 1984) (codified at 18 C.F.R. pts. 154, 381 (1987)) [hereinafter *Order No. 361*].

**7.** *Id.* at 5091.

**8.** Notice of the fee increase had earlier been published in the Federal Register. 51 Fed.Reg. 4310 (Feb. 4, 1986).

**9.** Letter from Eugene E. Threadgill to Kenneth F. Plumb (Mar. 14, 1986), J.App. 11.

**10.** Motion of Raton Gas Transmission Company for Relief from PGA Fee and for Permission to Offset Fee Against Change in Raton's Rates, *Raton Gas Transmission Co.,* FERC Docket No.

TA–86–1–40 (dated Mar. 20, 1986), J.App. 13 [hereinafter Motion for Relief].

**11.** *Id.* at 2, J.App. 14.

**12.** *Id.* at 4, J.App. 16.

**13.** *Raton Gas Transmission Co.,* FERC Docket Nos. TA 86–1–40–000 & TA 86–1–40–001 (filed Aug. 5, 1986) (order denying refund, denying permission to offset fee against rate reduction and denying late intervention), J.App. 29.

**14.** *Raton Gas Transmission Co.,* FERC Docket No. TA 86–1–40–002 (filed Nov. 26, 1986) (order denying rehearing), J.App. 49.

**15.** Brief for Petitioner at 19–21.

**16.** *Id.* at 21–23.

**17.** Brief for Respondent at 7–8; see also Motion to Dismiss, *Raton Gas Transmission Co. v. FERC,* No. 87–1021 (D.C.Cir.) (filed June 15, 1987) at 5–10, Respondent's Appendix (R.App.) B–5 to B–10.

**18.** Brief for Respondent at 7; see *Phillips Petroleum Co. v. FERC,* 786 F.2d 370 (10th Cir.1986); see also Motion to Dismiss, *supra* note 17, at 7, 9, R.App. B–7, B–9.

ural Gas Act.[19] Raton counters with the argument that circuit precedent preserves this court's jurisdiction to entertain a late attack on an agency rule under circumstances of the sort presented here.[20] We resolve this quarrel by examining the scenarios in which a late challenge to an agency order may be deemed excusable.

■ To begin with, an attack upon the validity of an agency regulation after expiration of the statutory review period is rarely to be permitted.[21] Strict enforcement of the time limit is necessary to preserve finality in agency decisionmaking and to protect justifiable reliance on agency rules.[22] Nevertheless, we have long recognized a limited number of exceptional situations in which an objection to an agency regulation is considered timely even after the statutory review period has ended.

■ The law of this circuit was recently summarized in our opinion in *NLRB Union v. FLRA*.[23] There we noted a distinction between challenges that originate in a petition for rulemaking and those that do not.[24] We stated that agency denials of petitions for rulemaking are generally subject to judicial review to a degree commensurate with the nature of the substantive claim.[25]

Even absent a petition for rulemaking, a litigant may still, under certain circumstances, question an agency regulation after the expiration of the statutory period for direct review. This we have allowed when the agency's action did not "reasonably put[ ] aggrieved parties on notice of the rule's content,"[26] or clearly remained unripe for judicial review throughout the statutory review period.[27] On several occasions we have suggested that there may be review of agency action outside the statutory review period in extreme cases involving gross violations of statutory or constitutional mandates, or denial of an adequate opportunity to test the regulation in court.[28] Our observations in *Investment Company Institute v. Board of Governors*,[29] aptly sum up our approach in these cases:

> Where an aggrieved party has a valid excuse for failing to challenge the initial order promulgating a regulation, the regulation may be opened to attack upon review of a Board adjudication which applies the regulation.... However, absent a convincing justification, the litigant should be bound by the regulation. A contrary rule would thwart the principle of finality underlying the [statutory review period].[30]

■ Questions of a similar nature arise in cases presenting what at first blush appears to be a timely request for review of recent agency action, but the agency argues that the requester is actually attempting to litigate the validity of an older regu-

**19.** See 15 U.S.C. § 717r(b) (1982).

**20.** Brief for Petitioner at 10–12.

**21.** E.g., *Eagle–Picher Indus. v. EPA*, 245 U.S.App. D.C. 179, 185, 759 F.2d 905, 911 (1985).

**22.** *Id.*

**23.** 266 U.S.App.D.C. 165, 169–171, 834 F.2d 191, 195–197 (1987).

**24.** *Id.* at 169–170, 834 F.2d at 195–196.

**25.** See *id.* at 170–171, 834 F.2d at 196–197; *Farmers Export Co. v. United States*, 244 U.S. App.D.C. 413, 417, 758 F.2d 733, 737 (1985); *Professional Drivers Council v. Bureau of Motor Carrier Safety*, 227 U.S.App.D.C. 312, 314 n. 2, 706 F.2d 1216, 1218 n. 2 (1983); *NRDC v. NRC*, 215 U.S.App.D.C. 32, 39–40, 666 F.2d 595, 602–603 (1981); *Geller v. FCC*, 198 U.S.App.D.C. 31, 34–35, 610 F.2d 973, 977–978 (1979); *Functional*

*Music, Inc. v. FCC*, 107 U.S.App.D.C. 34, 37, 274 F.2d 543, 546 (1958).

**26.** *RCA Global Communications, Inc. v. FCC*, 244 U.S.App.D.C. 402, 410, 758 F.2d 722, 730 (1985).

**27.** *Eagle–Picher Indus. v. EPA*, supra note 21, 245 U.S.App.D.C. at 185–189, 759 F.2d at 911–915; *Baltimore Gas & Elec. Co. v. ICC*, 217 U.S.App.D.C. 293, 296–297, 672 F.2d 146, 149–150 (1982).

**28.** *NLRB Union v. FLRA*, supra note 23, 266 U.S.App.D.C. at 169–170, 834 F.2d at 195–196; *Geller v. FCC*, supra note 25, 198 U.S.App.D.C. at 35, 610 F.2d at 978; *Functional Music, Inc. v. FCC*, supra note 25, 107 U.S.App.D.C. at 37, 274 F.2d at 546.

**29.** 179 U.S.App.D.C. 311, 551 F.2d 1270 (1977).

**30.** *Id.* at 323 n. 13, 551 F.2d at 1282 n. 13 (citations omitted).

lation that is otherwise unreviewable.[31] An agency may, for instance, contend that targeted action merely implements policy choices embodied in an older regulation, for which the statutory period for review has passed.[32] The court's task then is to determine whether there can be meaningful review of the later action without upsetting the basis of the earlier action or instead, whether the later action is inextricably intertwined with the earlier. In the latter event, the caselaw of this circuit makes clear that review may be had only if the earlier action is itself reviewable by reason of the criteria we previously have considered.

This principle is exemplified by our decision in *MCI Telecommunications Corp. v. FCC.*[33] In that case, MCI challenged a provision in the Federal Communications Commission's *Sixth Report and Order,* requiring certain common carriers of interstate telephone messages to refrain from filing tariffs.[34] MCI's petition was filed one day after the release of the *Sixth Report,* but FCC argued that nonetheless it was untimely because it was actually directed at FCC's earlier *Fourth Report,* which had merely *permitted* the carriers to forego the filing of tariffs.[35] Because the policy favoring forbearance predated issuance of the *Sixth Report* by a year, FCC asserted, MCI's challenge to the latter was untimely.[36] We found, however, that FCC in the *Sixth Report* had reconstructed its forbearance policy fundamentally by changing it from a permissive to a mandatory course of action.[37] Since the *Fourth Report* did not anticipate the *Sixth Report's* step in this crucial respect, any nec-

essary connection between the two, we said, was " '*entirely unspoken* (or impenetrably obscure).' " [38]

■ In summary, the law of our circuit distinguishes between challenges presented in a petition for rulemaking and those that are not. Attacks launched outside a petition for rulemaking must meet time requirements unless they fall within one of a few well-defined categories. And when an otherwise timely protest is resisted by an agency as an effort to reopen a decision for which the time for judicial review has expired, we must ascertain whether the venture necessarily will implicate the older rule, or whether it is confined to the newer agency action.

### III

In the case before us, we note at the outset that Raton's request for relief from the $4,000 fee did not take the form of a petition for rulemaking. It made its appearance in the course of a PGA filing, and followed Raton's earlier letter of protest accompanying its payment of the higher fee. Raton's motion therefore was an attack upon a rule—the one raising the fee for processing PGA filings—stemming from a particular application.

The motion for relief contained three distinct elements. There was an argument that PGA filings seeking rate decreases instead of increases confer no special benefit, and no fee at all should be charged for them.[39] There was the further argument that the $4,000 fee is not justified by the cost to the Commission of processing Ra-

**31.** See *American Trading Transp. Co. v. United States,* 253 U.S.App.D.C. 40, 48 n. 11, 791 F.2d 942, 950 n. 11 (1986); *MCI Telecommunications Corp. v. FCC,* 247 U.S.App.D.C. 32, 35–37, 765 F.2d 1186, 1189–1191 (1985); *Montana v. Clark,* 242 U.S.App.D.C. 62, 65–66, 749 F.2d 740, 743–744 (1984); *National Bank v. Comptroller,* 233 U.S.App.D.C. 284, 285–286, 725 F.2d 1390, 1391–1392 (1984).

**32.** See *MCI Telecommunications Corp. v. FCC, supra* note 31, 247 U.S.App.D.C. at 35–36, 765 F.2d at 1189–1190.

**33.** *Supra* note 31.

**34.** 247 U.S.App.D.C. at 33–35, 765 F.2d at 1187–1189.

**35.** *Id.* at 35–36, 765 F.2d at 1189–1190.

**36.** *Id.*

**37.** *Id.* at 36, 765 F.2d at 1190.

**38.** *Id.* at 37, 765 F.2d at 1191 (quoting *RCA Global Communications, Inc. v. FCC, supra* note 26, 244 U.S.App.D.C. at 411, 758 F.2d at 731) (emphasis in original).

**39.** Motion for Relief, *supra* note 10, at 2–4, J.App. 14–16.

ton's six-page filing, and that, indeed, a uniform fee imposes a hardship on small pipelines.[40] Lastly, there was a request that the Commission allow Raton to pass the amount of any fee through to its customers.[41]

█ We examine first Raton's claim that PGA filings for rate reductions deserve no processing fee and conclude that it is untimely. On its face, *Order No. 361* does not limit fees for PGA filings to rate increases; rather, the pertinent language is broad enough to encompass all PGA filings.[42] Moreover, the regulations call for PGA filings reporting changes in the price of gas,[43] which naturally would include any decrease as well as any increase in that price. No claim has been made, nor seemingly could be made, that *Order No. 361* was unripe for review at the time of its promulgation. Raton may not assert the invalidity of the Commission's rule on grounds fully known to it at the time of issuance.[44]

█ Even were it proper to consider this challenge on the merits, we would still reject Raton's position. The regulation demanding payment of fees for special benefits, as we have said, is written broadly enough to intercept PGA filings seeking rate reductions as well as rate elevations, and we have not been referred to any administrative practice inconsistent with the text of the rule. Once it chose the PGA procedure over a Section 4 proceeding, Raton became responsible for PGA filings for both decreases and increases. We have held that the term "special benefits" justifies the levying of a fee when an agency assists a regulated entity in complying with

its statutory obligations.[45] The Commission's processing of Raton's filing conferred enough of a special benefit to support a fee requirement under the governing statute.[46]

Raton further contends that the new fee of $4,000 is invalid on the ground that it does not reflect the real expense of processing Raton's PGA filing, and that it visits a severe hardship on a small pipeline. At the administrative level, Raton asked that in the event that some fee was to be charged, the Commission revise its fee structure to reflect the true cost of processing filings.[47] This complaint, unlike the more general challenge to the Commission's power to impose any fee, does not implicate *Order No. 361* directly, but focuses instead on the increase announced only a month prior to Raton's motion for relief.[48]

The Commission maintains that this claim nonetheless is foreclosed by the order, and is as well shattered by the Tenth Circuit's decision in *Phillips Petroleum Co.*[49] which upheld various parts of the order. The Commission contends that since the original rule plainly set forth the methodology for calculating the fee for filings, and also made clear that the fee was to be uniform for all entities, large and small, except in special circumstances covered by individual waivers, consideration of Raton's protest would necessarily involve a forbidden substantive review of *Order No. 361*.[50]

█ We find the Commission's argument unacceptable for two reasons. First, it is uncertain whether the original justifications for the fee remain valid in light of the size of the increase involved. Put another

**40.** *Id.* at 4, J.App. 16.

**41.** *Id.* at 5, J.App. 17. This point, however, has not been reasserted here.

**42.** *Order No. 361, supra* note 6, 49 Fed.Reg. at 5091.

**43.** 18 C.F.R. § 154.38 (1987); see note 3 *supra.*

**44.** *NRDC v. NRC, supra* note 25, 215 U.S.App.D.C. at 39–40, 666 F.2d at 602–603.

**45.** *Electronic Indus. Ass'n v. FCC,* 180 U.S.App.D.C. 250, 256, 554 F.2d 1109, 1115 (1976).

**46.** The Tenth Circuit has also endorsed this rationale. *Phillips Petroleum Co. v. FERC, supra* note 18, 786 F.2d at 376.

**47.** Motion for Relief, *supra* note 10, at 4, J.App. 16.

**48.** 51 Fed.Reg. 4310 (Feb. 4, 1986).

**49.** *Supra* note 18.

**50.** Motion to Dismiss, *supra* note 17, at 9–10, R.App. B–9 to B–10.

way, the new fees may no longer be adequately cost-justified, as required by the Act.[51] The Commission did not set forth a new calculation of costs in its order announcing the higher fees; it merely stated that the fees had been recalculated by use of the Commission's new time distribution reporting system.[52] Ordinarily that explanation might suffice, but we think the immensity of the increase, which almost doubled the fees,[53] concomitantly with the resulting financial burden on small pipelines, require somewhat more. We do not know whether the sudden jump in fees was prompted by a rise in the Commission's labor costs, or in the average size or complexity of PGA filings, or because more or different types of agency operations entered into the calculation of time spent in processing such filings, or, on the other hand, for some other reason, or for no reason at all.

The second reason for our disagreement with the Commission is that the larger fees shown a set of fairness concerns not previously present. The Commission charges a uniform fee regardless of whether the filing is six or two thousand pages long, and whether the task of processing is simple or complicated. Raton states, without dispute by the Commission, that the higher fees will consume a significant portion of its net revenues each year.[54] If the fees were commensurate with the time and labor required for the Commission to process filings of different length or complexity, Raton submits, it could achieve substantial savings. The need for such selectivity may not have been as great when the fees, and

thus their financial impact, were much lower.[55] After the increase, however, a uniform fee may no longer comport with the statutory call for fairness.[56]

Similarly, the Commission's provision in *Order No. 361* of a case-by-case fee waiver procedure for applicants suffering from economic hardship cannot fully allay the fairness concerns raised by the new fee. The Commission itself indicated that the fee waiver procedure was intended only for isolated instances of utilities in "a state of financial distress or emergency."[57] The waiver procedure is therefore quite ill-suited to handle the problem presented by the new fee—small companies whose net revenues may be significantly affected by the size of the fees but are not facing imminent financial ruin.

When the Commission first erected its fee structure it realized that future reduction of fees for some groups of filings might become appropriate. A specific example adverted to was "where there is a reduction in the amount of time required to process a filing."[58] When *Order No. 361* was promulgated, the Commission may properly have determined that the difficulty inherent in setting different fees for PGA filings at varying levels of complexity outweighed any easing of the burden on utilities that would benefit from graduated fees. With the large hikes in fees recently occurring, however, the balance of fairness and efficiency may well have tipped in the other direction, to such an extent that variations in fees assessed against utilities making PGA filings of vastly different

51. See 31 U.S.C. § 9701(b)(2)(A) (1982).

52. 51 Fed.Reg. 4310 (Feb. 4, 1986).

53. In consequence of a still-later order enlarging the increase further, the fees currently in effect are more than double those specified in *Order No. 361.* Appellant's Appendix (A.App.) A–36.

54. Motion for Relief, *supra* note 10, at 5, J.App. 17.

55. In *Order No. 361,* the Commission discussed the possibility that uniform fees might expose

small pipelines to severe economic hardship. It stated, however, its expectation that such hardship would be rare "since the Commission has reduced the fee significantly as a result of excluding any recovery of hearing costs." *Order No. 361, supra* note 6, 49 Fed.Reg. at 5089. The new fees, in our view, serve at least to reopen the question of the accuracy and adequacy of that statement.

56. See 31 U.S.C. § 9701(b)(1) (1982).

57. *Order No. 361, supra* note 6, 49 Fed.Reg. at 5089.

58. *Id.*

 

lengths could be significant.[59] If, for instance, the recent spiral of fees upward is attributable to rapid growth in the average length and complexity of filings, it may be inequitable to force utilities continuing to submit simple filings, such as Raton, to share disproportionately the financial onus of processing heavy filings. We therefore hold that Raton's challenge to the size of the new fees is timely.

## IV

■ Our examination of the merits of the Commission's refusal to reduce Raton's fee may be brief. On rehearing, the Commission affirmed exaction of the uniform $4,000 fee on the ground that the Tenth Circuit[60] had approved the formula by which the Commission had calculated it.[61] As we have explained, however, approval of the old fee does not automatically translate into validity of the new fee. The Act requires fees assessed for agency service to be cost-justified[62] and fair.[63] The new fee may no longer be cost-justified, and its uniform application to all pipelines may be substantively unfair to smaller pipelines.[64] Since the Commission has not furnished any explanation sufficient to put these concerns to rest, we cannot presently say that the new fees are consistent with the statutory mandates.

We conclude that part of Raton's challenge is timely and that the Commission has not sufficiently justified its position on the new fees. We therefore vacate the Commission's order and remand the case for further proceedings. On remand, the Commission must reconsider its decision to charge Raton the full $4,000 fee and must supply a fuller explanation of the result it reaches. It may also reevaluate the situation to determine whether it is now time to devise a new fee schedule better assuring fairness of the fees charged to small pipelines.

*So ordered.*

---

59. Raton notes that PGA filings by other utilities may exceed 2,600 pages in length. Application for Rehearing of Raton Gas Transmission Company, *Raton Gas Transmission Co.,* FERC Docket No. TA 86–1–40 (filed Aug. 29, 1986) at 5, J.App. 40.

60. *Phillips Petroleum Co. v. FERC, supra* note 18.

61. *Raton Gas Transmission Co., supra* note 14, at 3, J.App. 51.

62. 31 U.S.C. § 9701(b)(2)(A) (1982).

63. *Id.* § 9701(b)(1).

64. See Part III *supra.*