**MERCEDES–BENZ OF NORTH AMERICA, INC., Petitioner,**

v.

**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, Respondent,**

**General Motors Corporation, Intervenor.**

No. 89–1762.

United States Court of Appeals, District of Columbia Circuit.

Argued May 21, 1991.

Decided July 12, 1991.

David A. Vaughan, with whom Elliot B. Staffin was on the brief, Washington, D.C., for petitioner.

Kenneth N. Weinstein, Asst. Chief Counsel, Nat. Highway Traffic Safety Admin., with whom Stuart M. Gerson, Asst. Atty. Gen., Paul Jackson Rice, Chief Counsel and Enid Rubenstein, Atty., Nat. Highway Traffic Safety Admin. were on the brief, Washington, D.C., for respondent. Stephen Wood, Atty., Nat. Highway Traffic Safety Admin., Washington, D.C., also entered an appearance for respondent.

John Gibson Mullan, Washington, D.C., with whom Dennis R. Minano and Thomas L. Arnett were on the brief, Detroit, Mich., for intervenor.

Before MIKVA, Chief Judge, and WILLIAMS and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In 1975 Congress designed a system to reduce American energy consumption through corporate average fuel economy ("CAFE") standards for cars. See Title III of the Energy Policy and Conservation Act,

Pub.L. No. 94–163, 89 Stat. 901 (1975), adding § 502 *et seq.* to the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 2002 *et seq.* (1988) ("the Act"). The National Highway Traffic Safety Administration ("NHTSA"), which administers the CAFE program, assessed a civil penalty against Mercedes–Benz for failing to meet the standard for model year ("MY") 1985. Mercedes–Benz asks us to reverse the penalty and to require NHTSA on remand to entertain its claim that the standard should be set lower.

The only standard genuinely at issue here was set by Congress itself, against which Mercedes–Benz makes no constitutional claim. Mercedes–Benz's only attack is on NHTSA, and the only conduct for which NHTSA is even theoretically vulnerable is its failure to amend the congressional standard. As Mercedes–Benz petitioned for an amendment of the 1985 standard only in August 1987 and the NHTSA Administrator lawfully rejected the petition on the ground that retroactive amendment would be inconsistent with the statutory scheme, see *Passenger Automobile Average Fuel Economy Standards; Denial of Petitions for Rulemaking,* 53 Fed.Reg. 15241, 15243/3 (1988); *GMC v. NHTSA,* 898 F.2d 165 (D.C.Cir.1990), there is no error in NHTSA's rejection of Mercedes–Benz's attack on the standard.

\* \* \*

For certain model years, including 1985, Congress set the CAFE standard itself (27.5 miles per gallon); for model years 1981 through 1984, it authorized NHTSA to set standards no later than July 1, 1977. § 502(a)(3), 15 U.S.C. § 2002(a)(3). As to both groups of standards, Congress provided that NHTSA "may, by rule, amend" the previously established standard. § 502(a)(4), 15 U.S.C. § 2002(a)(4) (MY 1985 and later years); § 502(f)(1), 15 U.S.C. § 2002(f)(1) (MYs 1981–84; between "by rule" and "amend", this latter section inserts "from time to time"). One may obtain judicial review of a rule establishing a CAFE standard by filing a petition in this court within 60 days of promulgation. § 504(a), 15 U.S.C. § 2004(a).

Petitioner Mercedes–Benz's average fuel economy rating for 1985 was 23.6 mpg, nearly four miles per gallon below the congressional standard. At the conclusion of an enforcement proceeding initiated by NHTSA, see 15 U.S.C. §§ 2007(a)(1), 2008(b) (1988), Mercedes was assessed a civil penalty of $5,509,400, which it appeals. Mercedes does not quarrel with NHTSA's math; the methodology for calculating fines is quite straightforward.[1] Instead it urges that NHTSA wrongfully refused to entertain its substantive attack on the underlying CAFE standard in the enforcement proceeding.

The parties devote considerable energy to the general question of when a party who is subjected to enforcement proceedings for violating an agency rule, for which Congress has limited the time for challenges, may attack the rule's validity. NHTSA, for example, reads *Raton Gas Transmission Co. v. FERC,* 852 F.2d 612, 615–16 (D.C.Cir.1988), as saying that where a party has allowed a statutory period for review to pass, it may attack the rule only under very limited exceptions, *not* including one for enforcement proceedings themselves. Mercedes–Benz, by contrast, cites *NLRB Union v. FLRA,* 834 F.2d 191, 195–96 (D.C.Cir.1987), for the view that a party may always, as a defense to an enforcement proceeding, attack the agency's authority to promulgate the regulations. In an amicus brief, General Motors reminds us that before *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), *pre*-enforcement review was normally unavailable altogether. It argues that the combination of *Abbott Labs* with the congressional practice of imposing time limits should not be taken as *forbidding* the method of challenging a rule that used to be the only one *allowed.* As there are plenty of statutes where Congress has coupled a time limit

---

1. The fine is $5 for every tenth of a mile per gallon by which the manufacturer's CAFE level falls short of the standard, multiplied by the total number of cars it produced or imported that year. *Id.*

with explicit preclusion of review, see Frederick Davis, *Judicial Review of Rulemaking: New Patterns and New Problems*, 1981 Duke L.J. 279, 297–308 (charting various congressional treatments of the matter), there is a case for inferring, when Congress provided a time limit but no explicit preclusion, that it intended to leave review open at enforcement—at least as to the rule's substantive validity. *Atlantic & Gulf Stevedores, Inc. v. OSHRC*, 534 F.2d 541, 550–51 (3rd Cir.1976).

These authorities are not, ultimately, relevant to the disposition of this case. As to the 1985 model year, Mercedes–Benz objects not to an agency rule but to a congressional standard. NHTSA comes into the picture only because under the Act it *"may*, by rule, amend the average fuel economy standard … for model year 1985 … to a level which [it] determine[s] is the maximum feasible average fuel economy level for [that] model year." § 502(a)(4), 15 U.S.C. § 2002(a)(4) (1988) (emphasis added).[2] Mercedes–Benz reads this provision as creating a duty in NHTSA "to reevaluate the feasibility of the MYs 1984–1985 CAFE standards in order to ensure their continued validity in light of changing circumstances." Mercedes–Benz Brief at 42. Mercedes–Benz claims that falling gasoline prices in the early 1980s rendered the 27.5 mpg standard infeasible for 1985 (by raising consumer demand for larger cars), and that NHTSA was bound to change it.

In essence this argument uses congressional provision of an escape hatch (NHTSA's amendment authority) to (a) turn Congress's 27.5 mpg standard into the agency's standard (b) undermine its substantive validity as to any period for which it ceased to be "feasible" as Congress used that term in § 502(a)(4).

■ This doesn't add up. A congressional standard is, apart from constitutional infirmities, valid until it is changed. Con-

gress here provided a mechanism for change. Mercedes–Benz failed to invoke that mechanism until after MY 1985 became history. When it did so, NHTSA refused to make the change on the ground that retroactive amendments would disrupt the statutory scheme, and we upheld that refusal. *GMC v. NHTSA*, 898 F.2d 165 (D.C.Cir.1990). Thus, the standard was lawful unless NHTSA had some duty, in the face of declining gas prices, to amend the 1985 standard on its own initiative.

The statutory text undercuts any argument that NHTSA had such a duty. Congress said that NHTSA "may" amend, not that it "must" or "shall" amend. § 502(a)(4), 15 U.S.C. § 2002(a)(4) (1988). A fortiori, where no one asks for an amendment, NHTSA is not obliged to produce one. Mercedes–Benz argues that because NHTSA must "monitor" the success of the CAFE program and send annual reports to Congress, § 502(a)(2), 15 U.S.C. § 2002(a)(2), it must (therefore) adjust the statutory standard where conditions are appropriate. The conclusion does not follow: requiring NHTSA to monitor and report on the effects of CAFE standards more naturally suggests that Congress simply wished to be kept informed as to the consequences of the law, presumably with a view to making its own adjustments.

Mercedes–Benz also believes that in the proceeding for enforcement of the MY 1985 standard, NHTSA should have entertained Mercedes–Benz's attack on the MY 1984 standard. The 1984 standard is relevant to the fine for MY 1985 because, had it been lower, Mercedes–Benz would have earned credits that it could have applied against the fine for 1985.[3]

■ Here, of course, we do not deal with a congressional standard, so we cannot say, as readily as we did for the 1985 standard, that it was valid until amended or until

---

2. In determining feasibility, NHTSA is to consider the "(1) technological feasibility; (2) economic practicality; (3) the effect of other Federal motor vehicle standards on fuel economy; and (4) the need of the Nation to conserve energy." § 502(e), 15 U.S.C. § 2002(e) (1988).

3. When a manufacturer exceeds the applicable CAFE standards in any model year, it earns "credits" that can be used to offset civil penalties in model years in which the manufacturer incurs a shortfall. See § 502(*l*), 15 U.S.C. § 2002(*l*). Credits may be carried forward or back for up to three model years. *Id.*

rendered unconstitutional by changed circumstances. But even if we assume Mercedes–Benz's general claim—that one against whom a NHTSA-promulgated CAFE rule is enforced may challenge its validity at enforcement despite the passage of the statutory time limit—NHTSA prevails anyway, as enforcement of the 1984 standard came and went without Mercedes–Benz's attacking it. Although Mercedes–Benz was not charged a fine for MY 1984, it was given notice of its shortfall of over $3 million, see J.A. 186 (NHTSA notice to Mercedes–Benz), and it could have seized that occasion for attacking the 1984 standard. See *id.;* see also § 502(*l*)(1)(E), 15 U.S.C. § 2002(*l*)(1)(E); 49 C.F.R. §§ 511.-11(b)(4), 511.12(a). Although the shortfall produced no fine, being offset by previously accumulated credits, surely that was the moment of enforcement. Any broader view would mean that the object of enforcement of a CAFE standard in any given year (an enforcement) necessarily occurring somewhat after the end of that year) could reach back to attack the standard applying to any past year that directly or indirectly was a source of potential credits. The most expansive view of enforcement challenges could not demand so much.

As Mercedes–Benz's fine was imposed on the basis of a congressional standard whose constitutionality is not questioned and which has not been amended, the petition for review is

*Denied.*