RATON GAS TRANSMISSION
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 87–1021.

United States Court of Appeals,
District of Columbia Circuit.

Decided Dec. 8, 1989.

Eugene E. Threadgill, Washington, D.C., submitted the application, on behalf of petitioner.

Catherine C. Cook, General Counsel, Jerome M. Feit, Sol., and Kim G. Bruno, Atty., F.E.R.C., Washington, D.C., submitted an opposition, on behalf of respondent.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge ROBINSON.

Dissenting Opinion filed by Circuit Judge SILBERMAN.

SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge:

Raton Gas Transmission Company applies for taxation of court costs [1] and allowance of attorneys' fees [2] following our resolution of its controversy with the Federal Energy Regulatory Commission over fees charged upon its Purchased Gas Adjustment (PGA) filings.[3] The Commission contends that an assessment of court costs is precluded by statute.[4] It resists any recovery of attorneys' fees, not on grounds that Raton did not prevail in the underlying litigation,[5] but that the Commission's stance therein was adequately justified.[6]

We share the Commission's conviction that taxation of court costs is statutorily barred. We conclude, however, that Raton prevailed sufficiently to qualify for recovery of attorneys' fees in some amount, and that the Commission was not substantially justified in advancing the defenses we found lacking. We accordingly award such fees as we deem appropriate.

I

We open our discussion with a summary of the salient events forerunning the present dispute. Raton objected to a fee charged uniformly by the Commission upon PGA filings by regulated utilities.[7] Raton had submitted with a six-page PGA filing a check for $2,300, a fee amount established by the Commission in its *Order No. 361*.[8] Shortly before Raton's submission, however, the Commission had raised the filing fee to $4,000.[9] Raton paid the $1,700 difference under protest and then sought relief therefrom. After exhausting its administrative remedies without achieving success, Raton petitioned for review by this court.

Originally, Raton asserted two grounds here. First, it contended that it should not have to pay any fee at all since its filing would merely enable it to lower the price of its gas, and would not result in any special benefit. Alternatively, Raton insisted that the fee was not commensurate with the cost to the Commission of processing Raton's six-page filing.[10] We rejected Raton's first argument, not only as an attack on *Order No. 361* made long after expiration of the statutory 60-day period for judicial review,[11] but also because "[t]he Commission's processing of Raton's filing conferred enough of a special benefit to support a fee requirement under the governing statute." [12]

With respect to Raton's objection to the size of the fee, however, we disagreed with the Commission that Raton was tardy. We

---

1. See Fed.R.App.P. 39(a)–(c).

2. See Equal Access to Justice Act § 204(a), (b), (d)(1)(A), 28 U.S.C. § 2412(b), (d)(1)(A) (1982 & Supp. V 1987).

3. *Raton Gas Transmission Co. v. FERC,* 271 U.S.App.D.C. 314, 852 F.2d 612 (1988).

4. See Natural Gas Act § 22, 15 U.S.C. § 717u (1982).

5. See 28 U.S.C. § 2412(b), (d)(1)(A).

6. See *id.* § 2412(d)(1)(A).

7. Fees were set in 1984 by the Commission's *Order No. 361,* 49 Fed.Reg. 5083 (1984) (codified at 18 C.F.R. pts. 154, 381 (1987)), pursuant to the Independent Offices Appropriations Act, 31 U.S.C. § 9701 (1982), "which authorizes agen-

cies to collect fees for services provided to identifiable beneficiaries and thereby make agencies 'self-sustaining to the extent possible.'" *Phillips Petroleum Co. v. FERC,* 786 F.2d 370, 371 (10th Cir.1986), *cert. denied,* 479 U.S. 823, 107 S.Ct. 92, 93 L.Ed.2d 44 (1986).

8. *Supra* note 7.

9. 51 Fed.Reg. 4310 (1986). Still later, the Commission hiked the fee to $4,700. 52 Fed.Reg. 10367 (1987) (codified at 18 C.F.R. § 381.204 (1988)).

10. *Raton Gas Transmission Co. v. FERC, supra* note 3, 271 U.S.App.D.C. at 316, 852 F.2d at 614.

11. *Id.* at 319, 852 F.2d at 617.

12. *Id.*

pointed out that Raton's petition for review did not "implicate *Order No. 361* directly, but focuse[d] instead on the increase [which was] announced only a month prior to Raton's motion for [administrative] relief,"[13] and which spawned a new generation of concerns.[14] With respect to these, we said, Raton's petition for review was timely,[15] and the Commission's explanation inadequate.[16] Reminding the Commission that filing fees must be both "cost-justified and fair,"[17] we vacated its order and remanded the case to the Commission for reconsideration of its decision to charge Raton the full $4,000.[18] Following our remand, the Commission, "partially in response" to our decision, modified its regulation to reduce to $1,800 the fee for PGA filings by "nonmajor" natural gas companies such as Raton.[19]

## II

Raton's application has provoked a welter of arguments and counterarguments, and to some extent concessions by Raton. It is useful, if indeed not necessary, to

catalog them before proceeding to further analysis.

In the beginning, Raton asserted that it was the prevailing party in this court,[20] and as such was entitled to court costs in the amount of $924 and attorneys' fees aggregating $17,200,[21] for a total of $18,124.[22] Citing the steady increase in the cost of living,[23] and declaring that "[p]ractice before the Federal Energy Regulatory Commission requires specialized legal experience,"[24] Raton beseeched us to exercise our authority to relax the Equal Access to Justice Act's ceiling on attorneys' fee allowances,[25] and to award compensation at the rate of $100 per hour for the services of its counsel.[26]

The Commission opposed Raton's application and moved to dismiss it on grounds that taxation of costs against the Commission is prohibited by the Natural Gas Act,[27] and that Raton could not recover attorneys' fees because the Commission's position in the main litigation was substantially justified.[28] Alternatively, the Commission maintained that if Raton were allowed attorneys' fees, the amount sought should be

13. *Id.* (footnote omitted).

14. *Id.*

15. *Id.*

16. *Id.* at 320, 852 F.2d at 618.

17. *Id.* at 321, 852 F.2d at 619 (citing 31 U.S.C. §§ 9701(b)(1), (2)(A) (1982)).

18. 271 U.S.App.D.C. at 321, 852 F.2d at 619.

19. *Order No. 506*, 53 Fed.Reg. 44182–44185 & nn. 1, 3, 20 (1988), as amended by *Order No. 506–A*, 54 Fed.Reg. 5424, 5427, 12901 (1989) (codified at 18 C.F.R. § 381.204 (1989)).

20. Application of Petitioner for Allowance of Attorney's Fees and Costs, *Raton Gas Transmission Co. v. FERC*, No. 87–1021 (D.C.Cir.) (filed Aug. 25, 1988), at 2 [hereinafter Application for Attorneys' Fees]. See note 55 *infra* and accompanying text.

21. Included in this amount were $1,200 for 12 hours spent by the attorney in preparing the application for costs and fees, and $6,200 as compensation at the rate of $40 per hour for the services of an "associate" who logged 155 hours. Application for Attorneys' Fees, *supra* note 19, at app. B. The Commission refers to this person as "a summer associate (law clerk)." See

notes 32–36 *infra* and accompanying text. We deem this difference insignificant. See note 75 *infra*.

22. Application for Attorneys' Fees, *supra* note 19, at 3.

23. *Id.*

24. *Id.* at 2.

25. "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (Supp. V 1987).

26. Application for Attorneys' Fees, *supra* note 19, at 3.

27. *Id.* at 2. See note 50 *infra* and accompanying text.

28. Respondent's Response in Opposition to Petitioner's Application for An Award of Attorney's Fees and Costs, *Raton Gas Transmission Co. v. FERC*, No. 87–1021 (D.C.Cir.) (filed Oct. 4, 1988) at 4–6 [hereinafter Respondent's Opposition].

reduced because the attorney's hourly rate surpassed the normal statutory ceiling[29] and thus was unreasonable.[30] The Commission suggested, however, that even if Raton were entitled to more than the statutory maximum rate would confer, the adjustment should be limited to a cost-of-living increase producing an hourly rate of $95.83.[31]

The Commission also argued that the "law clerk's" $40 hourly rate was too high.[32] Raton, said the Commission, had not shown that this rate was "within the range of prevailing market rates for law clerks of comparable experience"[33] nor had Raton provided information regarding the law clerk's salary.[34] In the Commission's view, the rate for the law clerk's work should not exceed the clerk's salary rate.[35] Finally, the Commission maintained that since Raton did not prevail on all of the issues raised in this court, time spent on those on which it was unsuccessful should be eliminated.[36]

In a tendered reply,[37] Raton conceded that taxation of costs against the Commission is forbidden by the Natural Gas Act,[38] and withdrew its request therefor.[39] Raton also accepted the $95.83 proposed by the Commission as the ceiling on the attorney's hourly rate.[40] Raton insisted, however, that the associate's hourly rate was reasonable, and that the Commission's litigation position was not substantially justified. Raton noted that in 1982 the District Court approved an hourly rate of $35 for a summer associate,[41] and maintained that with "a significant escalation in the cost of legal services since 1982," a $5 increase to $40 would not only be reasonable but also "conservative."[42] Raton declared that "an allowance of $40.00 per hour for the time spent by the associate in writing the Petitioner's Initial Brief, reviewing Respondent's Brief, assisting in the preparation of the Reply Brief, and assisting preparation for oral argument is justified."[43]

Raton amplified its claim that the Commission's defense in the principal case was not justified by characterizing "[r]espondent's litigation position [as] part of a course of conduct deliberately engaged in to obstruct sustantive (sic) review of its fee structure."[44] Raton observed that as soon as *Phillips Petroleum Co. v. FERC*[45] was decided, the Commission nearly doubled the fee, and later increased it again.[46] Raton said that by "radically changing the magnitude of the impact of that rule, and then claiming that the changed impact cannot be challenged because the impacted party had lost its opportunity to challenge the rule," the Commission had engaged in "'vexa-

---

29. See note 25 *supra* and accompanying text.

30. Respondent's Opposition, *supra* note 28, at 7.

31. *Id.* at 7–8.

32. *Id.* at 8. See note 21 *supra*.

33. Respondent's Opposition, *supra* note 28, at 8.

34. *Id.*

35. *Id.* at 8–9.

36. *Id.* at 9.

37. Raton has moved for leave to file out of time a reply to the Commission's opposition and motion to dismiss. Motion for Permission to File Delayed Response to Respondent's Motion to Dismiss, *Raton Gas Transmission Co. v. FERC*, No. 87–1021 (D.C.Cir.) (filed Oct. 4, 1988). Raton states that preparation and filing of this reply was delayed by a printer malfunction. By order of even date with this opinion, we grant Raton's motion.

38. See note 50 *infra* and accompanying text.

39. Reply of Petitioner to Respondent's Motion to Dismiss Application for Attorney's Fees, *Raton Gas Transmission Co. v. FERC*, No. 87–1021 (D.C.Cir.) (received Oct. 13, 1988), at 2 [hereinafter Petitioner's Reply].

40. *Id.*

41. *NAACP v. Donovan*, 554 F.Supp. 715, 719 (D.D.C.1981).

42. Petitioner's Reply, *supra* note 39, at 4.

43. *Id.*

44. *Id.* at 5.

45. *Supra* note 7 (upholding the uniform $2,300 fee for a PGA filing).

46. Petitioner's Reply, *supra* note 39, at 5. See also note 9 *supra*.

tious and oppressive' action,"[47] and thus went beyond the bounds of justification.

Raton countered the Commission's plea for disallowance of time spent on issues upon which Raton was not successful with the argument that they were distinctly secondary to the issues upon which it prevailed.[48] Raton suggested, however, that if a partial disallowance was in order, a 15 percent reduction would be appropriate.[49]

From this discussion, the status and contours of the parties' dispute emerge more clearly. Raton has abandoned its quest for taxation of court costs[50] and lowered the amount requested as attorneys' fees. Raton now asks that it be allowed fees at the hourly rate of $95.83 for its attorney's services and $40 per hour for the associate—a total of $16,741.[51] Raton suggests that this figure be reduced by 15 percent for time expended on unsuccessful arguments, but that the award include an additional $958 for 10 hours consumed in preparation of its reply to the Commission's "unjustified" motion to dismiss.[52] In all, Raton seeks fees in the amount of $15,188.[53]

## III

The Equal Access to Justice Act authorizes an award of attorneys' fees to Raton if it was the "prevailing party" in the underlying litigation, unless the position asserted therein by the Commission "was substantially justified" or "special circumstances make an award unjust."[54] Our task is to determine whether these requirements are met.

The first need detain us only for a moment. The Supreme Court informs us that " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' "[55] Indubitably, the issues on which Raton won in this court were crucial to its cause, and

---

**47.** Petitioner's Reply, *supra* note 39, at 5.

**48.** *Id.* at 6.

**49.** *Id.*

**50.** Section 22 of the Natural Gas Act, 15 U.S.C. § 717u (1982), provides that "[n]o costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this Act." In *Tulalip Tribes of Washington v. FERC*, 749 F.2d 1367, 1368 (9th Cir.1984), *cert. denied*, 474 U.S. 900, 106 S.Ct. 270, 88 L.Ed.2d 225 (1985), the court held that attorneys' fees as well as court costs are barred from recovery by § 317 of the Federal Power Act, 16 U.S.C. § 825p (1980), which provides almost identically that "[n]o costs shall be assessed against the Commission in any judicial proceeding under this chapter." This circuit, however, has flatly rejected that interpretation. *Hirschey v. FERC,* 245 U.S.App.D.C. 235, 237–239, 760 F.2d 305, 307–309 (1985).

**51.** Petitioner's Reply, *supra* note 39, at 7. The breakdown of the $16,741 is ($95.83 × 110 hours = $10,541) + ($40.00 × 155 hours = $6,200).

**52.** *Id.*

**53.** *Id.*

**54.** 28 U.S.C. § 2412(b) (Supp. V 1987) provides in pertinent part:

Unless expressly prohibited by statute, a court may award reasonable fees ... of attorneys, in addition to [taxable] costs [,] ... to the prevailing party in any civil action brought ... against ... any agency ... of the United States ... in any court having jurisdiction of such action. The United States shall be liable for such fees ... to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(d)(1)(A) (Supp. V 1987) specifies in pertinent part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any [taxable] costs ..., incurred by that party in any civil action (other than cases sounding in tort), *including proceedings for judicial review of agency action*, brought ... against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

**55.** *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). While the issues in *Hensley* implicated 42 U.S.C. § 1988 (1982), the Court announced that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7, 76 L.Ed.2d at 50 n. 7.

its twin victories secured ultimately the very benefit it had pursued—a drastic reduction of the PGA fee imposed upon Raton and other small pipelines.[56] Thus, the conclusion that Raton was a prevailing party is inescapable.[57] Indeed, the Commission does not say otherwise; rather, it insists that its position in the underlying case was sufficiently justified.

■ Substantial justification is a reasonableness standard recently defined by the Supreme Court as "justified in substance or in main", rather than "justified to a high degree."[58] The Court explained that the standard "is no different from the 'reasonable basis in law and fact' formulation[.]"[59] Measured by these criteria, it cannot be said that the position of the Commission was substantially justified.

The Commission's litigation position[60] is laid bare by "the arguments [it] relied upon ... in litigation."[61] The approach articulated by the Commission was that Raton's challenge was "foreclosed by [*Order No. 361*], and [was] as well shattered by the Tenth Circuit's decision in *Phillips Petroleum Co.*"[62] The Commission elucidated:

> [S]ince the original rule plainly set forth the methodology for calculating the fee for filings, and also made clear that the fee was to be uniform for all entities, large and small, except in special circumstances covered by individual waivers, consideration of Raton's protest would necessarily involve a forbidden substantive review of *Order No. 361*.[63]

At no time have these arguments been "justified [either] in substance or in main."

As we stated on our review of the Commission's refusal to alleviate the financial burden that fee-charging imposed upon Raton, the latter's alternative ground for relief was that the amount of the contested

---

**56.** See note 19 *supra* and accompanying text.

**57.** Compare *Sullivan v. Hudson*, —— U.S. ——, ——, 109 S.Ct. 2248, 2254–2255, 104 L.Ed.2d 941, 951–952 (1989) ("where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known"); *Hewitt v. Helms*, 482 U.S. 755, 760–761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654, 661 (1987) ("[i]t is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—*e.g.*, a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor") (citation omitted); *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653, 661 (1980) ("[w]e also find no merit in petitioner's suggestion that respondent was not the 'prevailing party' within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees"); S.Rep. No. 253, 96th Cong., 1st Sess. 7 (1979) ("the phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case ... or even if he does not ultimately prevail on all issues"). See also H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 11 (1980), *reprinted*

in 1980 U.S.Code Cong. & Admin.News 4953, 4990; H.R.Rep. No. 1434, 96th Cong., 2nd Sess. 21–22 (1980) (conference report).

**58.** *Pierce v. Underwood*, 487 U.S. 552, ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988).

**59.** *Id.* at ——, 108 S.Ct. at 2550, 101 L.Ed.2d at 504–505 (citations omitted).

**60.** "[P]osition ... means, in addition to the position taken ... in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D) (Supp. V 1987); see also *id.* § 2412(d)(1)(B). Each must be substantially justified. *Wilkett v. ICC*, 269 U.S.App.D.C. 249, 253, 844 F.2d 867, 871 (1988); *Federal Election Comm'n v. Rose*, 256 U.S.App.D.C. 395, 400–401, 806 F.2d 1081, 1086–1087 (1986). As we have observed, however, "the governmental action that precipitates the controversy almost invariably *is* its litigation position." *Federal Election Comm'n v. Rose*, *supra* 256 U.S.App.D.C. at 405, 806 F.2d at 1091 (quoting *Spencer v. NLRB*, 229 U.S.App.D.C. 225, 237, 712 F.2d 539, 551 (1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984)) (emphasis in original).

**61.** *Spencer v. NLRB*, *supra* note 60, 229 U.S.App. D.C. at 243, 712 F.2d at 557.

**62.** *Raton Gas Transmission Co. v. FERC*, *supra* note 3, 271 U.S.App.D.C. at 319, 852 F.2d at 617 (footnotes omitted).

**63.** *Id.*

fee was disproportionate to the cost of processing PGA filings.[64] We pointed out that "[t]his complaint, unlike the more general challenge to the Commission's power to impose any fee, does not implicate *Order No. 361* directly, but focuses instead on the increase announced only a month prior to Raton's motion for relief."[65] The inevitability of that conclusion, we think, was well-nigh obvious. And, for reasons elaborated in our earlier opinion,[66] the Commission's arguments that Raton's motion nonetheless assailed the original rather than the newer agency action quite plainly lacked the potential for carrying the day.

In no other respect do those arguments serve the Commission's theory of substantial justification. While clearly the Commission is authorized to charge filing fees, just as clearly they must be "cost-justified and fair,"[67] a point that *Phillips Petroleum Co.*[68] did not address. Furthermore, "approval of an old fee," the most that *Phillips Petroleum Co.* did, "does not automatically translate into validity of the new fee,"[69] against which Raton leveled its attack. *Phillips Petroleum Co.* thus offered no assistance to the Commission, and its invocation of *Order No. 361* was equally unfounded. The Commission did not rely on the methodology set forth in the original order when it increased its fees; it merely stated, without explanation, "that the fees had been recalculated by use of the Commission's new time distribution reporting system."[70] To boot, the Commission's fail-ure to supply the recalculation in its fee-hiking order pushed further into the dark the matter of cost-justification and fairness of the increase, which nearly doubled the original fee.[71] These decisional techniques do not survive the test of reasonableness.

Lastly, we inquire as to whether there were any special circumstances that would make an award of attorneys' fees to Raton unjust. None has been voiced, nor do we perceive any. So, with all three preconditions to such an award satisfied by Raton, we proceed to a determination of what the amount thereof should be.

## IV

The parties agree that the hourly rate for the services of Raton's attorney should not exceed $95.83.[72] That figure, by Raton's reasoning, would translate to a fee of $10,541.[73] There remain, however, disputes relative to treatment of the time devoted to issues on which Raton was not successful, and to the hourly rate for the services of the law clerk. In addition, Raton seeks compensation for hours expended in responding to the Commission's "unjustified" motion to dismiss.[74]

■■■ Raton's request for $40 per hour for the associate's work, we hold, is reasonable.[75] In both the Supreme Court and this circuit, comparable rates—and recently much higher rates—for legal assistants of

64. *Id.*

65. *Id.*

66. *Id.* at 319–321, 852 F.2d at 617–619.

67. *Id.* at 321, 852 F.2d at 619.

68. *Supra* note 7.

69. *Raton Gas Transmission Co. v. FERC, supra* note 3, 271 U.S.App.D.C. at 321, 852 F.2d at 619.

70. *Id.* at 320, 852 F.2d at 618.

71. *Id.*

72. See *Wilkett v. ICC, supra* note 60, 269 U.S. App.D.C. at 257, 844 F.2d at 875 (permitting 1987 cost-of-living increase to $95.83 per hour for attorneys in Washington, D.C.). Indeed, but for Raton's agreement to reduce, the original $100 attorney's hourly rate might have been approved in view of recent circuit precedent sustaining an upward cost-of-living adjustment of the statutory $75 cap to $100.35 for work done by an attorney in 1988. See *Jones v. Lujan,* 281 U.S.App.D.C. 105, 110 & n. 8, 887 F.2d 1096, 1101 & n. 8 (D.C.Cir.1989).

73. Respondent's Opposition, *supra* note 28, at 7–8; Petitioner's Reply, *supra* note 39, at 2.

74. *See* note 45 *supra.*

75. Legal assistants such as paralegals, law clerks and recent law graduates are to be compensated at their respective market rates. *Missouri v. Jenkins,* 491 U.S. ——, ——–——, 109 S.Ct. 2463, 2470–2472, 105 L.Ed.2d 229, 240–244 (1989); *In re Donovan,* 278 U.S.App.D.C. 194, 204–205 & n. 20, 877 F.2d 982, 992–993 & n. 20 (1989).

similar caliber have been upheld.[76] We deny, however, Raton's bid for compensation for the 10 hours spent on its response to the Commission's motion to dismiss, and deduct the $958 claimed therefor from the amount of the fee. The Commission's motion was clearly justified; Raton virtually invited the motion by its meritless demand for court costs, and for an hourly rate for its attorney that exceeded the statutory ceiling as increased. Moreover, Raton's reply to the Commission's motion served to confirm on several points that the Commission was correct.

In determining whether and by how much the rest of Raton's claimed fee should be reduced, we note that "[t]here is no precise rule or formula for making [such] determinations. The ... court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success. The court necessarily has discretion in making this equitable judgment."[77] To simplify matters, the applicant "should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims."[78]

Since Raton did not prevail on all of its contentions, it is evident that some reduction in the amount sought is called for.[79] We encounter problems, however, when we endeavor to ascertain how much time was consumed by Raton's unsuccessful activities. Raton did not identify the hours it worked on particular claims; instead, it recorded hours according to specific tasks, such as preparing and filing its briefs, and preparing for oral argument. The difficulty is compounded by hours expended by both its attorney and the associate on the same tasks.[80]

■ Raton raised two issues questioning the validity of the PGA filing fee. Raton first resisted the imposition of any fee whatsoever when a pipeline lowers its price; Raton's second challenge was to the cost-justification and fairness of charging a large fee uniformly without regard to the size of the pipeline or the complexity of its filing. In both instances, Raton was compelled to address the Commission's untimeliness objection. Raton pressed four major contentions and it succeeded on two—time-

**76.** *Missouri v. Jenkins, supra* note 75, 491 U.S. at —— & n. 10, 109 S.Ct. at 2472 & n. 10, 105 L.Ed.2d 241–243 & n. 10 (hourly rates of $35 for law clerks, $40 for paralegals, and $50 for recent law graduates in Kansas City, Missouri); *In re Donovan, supra* note 75, 278 U.S.App.D.C. at 205, 209, 877 F.2d at 993, 997 (hourly rates of $60 and $65 for law clerks and paralegals in Washington, D.C.); *Hirschey v. FERC,* 250 U.S. App.D.C. 1, 5–6, 777 F.2d 1, 5–6 (1985) (hourly rates of $30 for paralegals and $85 for associates in Washington, D.C.).

**77.** *Hensley v. Eckerhart, supra* note 55, 461 U.S. at 436–437, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. See also 28 U.S.C. § 2412(d)(1)(C) (Supp. V 1987), which provides:

The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

**78.** *Hensley v. Eckerhart, supra* note 55, 461 U.S. at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53 (citations omitted). "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended.

But at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12, 76 L.Ed.2d at 53 n. 12.

**79.** "[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley v. Eckerhart, supra* note 55, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51 (quoting *Davis v. County of Los Angeles,* 8 Empl.Prac.Dec. (CCH) ¶ 9444, at 5049 (C.D.Cal.1974)).

**80.** Raton's compensation requests are for 22 hours of the attorney's time and 140 hours of the associate's time devoted to the preparation and filing of Raton's initial brief, and for 48 hours of the attorney's time and 15 hours of the associate's time spent in review of the Commission's brief, and preparation and filing of Raton's reply brief. Petitioner's Reply, *supra* note 39, app. B. The Supreme Court has cautioned that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart, supra* note 55, 461 U.S. at 434, 103 S.Ct. at 1939–1940, 76 L.Ed.2d at 51.

liness of its assault on the fee increase, and absence of a showing of cost-justification and fairness thereof.

We are unwilling simply to translate that outcome to a 50 per cent success ratio and correspondingly make a 50 percent reduction in attorneys' fees. That approach could rest logically only upon the highly unlikely premise that Raton devoted an equal amount of time to each of its four theses. Recalling that Raton was willing to pay the original $2,300 filing fee, Raton's argument that no filing fee at all could be assessed clearly was not its strongest or primary point. Rather, it may plausibly be assumed that Raton devoted most of its effort to the claims on which it prevailed, and accordingly that a reduction of less than 50 percent is in order. The 15 percent reduction proposed by Raton, however, does not seem reasonable in view of Raton's limited success. Since Raton has not provided us with an adequate description of how much time was spent on each issue, we cannot " 'determine with a high degree of certainty' that the hours billed were reasonable;"[81] and where the "documentation of hours is inadequate, the ... court may reduce the award accordingly."[82] In the exercise of that discretion, we trim by 25 percent the amount of the fees requested for services rendered in the underlying litigation.

█ For similar reasons, we are constrained to exclude from the computation of Raton's award a portion of the 12 hours consumed in preparation of its application for fees.[83] We credit the application for the informational assistance it provided in connection with the claims for compensation, but its presentation in regard to court costs was a misadventure. Resorting again to our discretion, we subtract 6 hours of the 12 hours expended.

A judgment awarding Raton attorneys' fees in the amount of $12,268 will be entered.[84]

*So ordered.*

## APPENDIX
### COURT'S FEE CALCULATIONS

Amounts Requested:
  Attorney (110 hours × $95.83 per hour) ......................$10,541
  Associate (155 hours × $40 per hour) ...........................6,200
  Preparation for Reply (10 hours × $95.83) ................... 958

  Subtotal .......................$17,699

Reductions:
  On fee application (6 hours) .. $ − 575
  On Reply (10 hours) ............ − 958
  25% overall reduction of time spent in underlying litigation: 25% × ($16,741 − $1,150 = $15,591) .................... − 3,898

Fee Award ......................$12,268

SILBERMAN, Circuit Judge, dissenting:

I dissent for reasons similar to those I stated in *Jones v. Lujan,* 887 F.2d 1096 (D.C.Cir.1989) (Silberman, J., dissenting). Unlike the majority, I believe that the Federal Energy Regulatory Commission's litigation position in the underlying case, *see Raton Gas Transmission Co. v. FERC,*

---

**81.** *In re Donovan, supra* note 75, 278 U.S.App. D.C. at 207, 877 F.2d at 995. "[C]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by the attorney." *National Ass'n of Concerned Veterans v. Secretary of Defense,* 219 U.S.App.D.C. 94, 101, 675 F.2d 1319, 1326 (1982).

**82.** *Hensley v. Eckerhart, supra* note 55, 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. *See also In re Donovan, supra* note 75, 278 U.S.App. D.C. at 207, 877 F.2d at 995 (a vague description

may "compel[ ] the court to exclude such hours").

**83.** "Cases in this Circuit have routinely awarded reasonable fees incurred in requesting fees under fee-shifting statutes[.]" *Hirschey v. FERC, supra* note 76, 250 U.S.App.D.C. at 3, 777 F.2d at 3 (footnote omitted). See also *Sierra Club v. EPA,* 248 U.S.App.D.C. 107, 112–113, 769 F.2d 796, 811–812 (1985); *Laffey v. Northwest Airlines, Inc.,* 241 U.S.App.D.C. 11, 36–37, 746 F.2d 4, 29–30 (1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985).

**84.** In an appendix to this opinion, we summarize Raton's fee proposals and our calculations.

852 F.2d 612 (1988), was "substantially justified."